[PHILADELPHIA, JANUARY 19, 1830.]

## PAUL and another, Executors of PAUL, *against* SHALLCROSS and another.

### IN ERROR.

If property be sold at public sale, on certain terms, one of which is, that on non-compliance with those terms, the property shall be resold at the risk and expense of the purchaser, the second sale must not be clogged with terms likely to lower the price.

*Query,* Whether to make it a part of the conditions of the second sale that the balance remaining unpaid shall be secured by bond with *warrant of attorney* and mortgage, when the conditions of the first were, that it should be secured by bond and mortgage only, is not such an essential variance as will discharge the purchaser.

If the seller and the person to whom the property was struck off at the first sale, enter into an agreement, before the second sale takes place, that the latter shall take the property at the price he before bid for it, but the agreement contain terms, in other respects, essentially different from those of the first contract, he cannot, on failing to comply with the second contract, be made answerable on the first.

THIS case came before the court on a writ of error to the District Court for the city and county of *Philadelphia*, where it was an action on the case, brought by the plaintiffs in error, *Joseph Paul* and *Jonathan Wainwright*, executors of *Thomas Paul*, deceased, against *John Shallcross* and *Joseph Wilson*, the defendants in error, to recover damages for the breach of a written agreement, dated the 17th of *February*, 1824, for the sale by the plaintiffs to the defendants of certain real estate.

The cause was tried, and the jury found the following special verdict:—

"The jury find that the property was sold on the 17th day of *February*, 1824, by the plaintiffs to the defendants, by virtue of the following agreement:—

"Pursuant to the last will and testament of *Thomas Paul*, deceased, will be sold at public vendue, on *Tuesday*, the 17th of *Fe-*

(Paul and another, Executors of Paul, *v.* Shallcross and another.)

*bruary,* 1824, at 1 o'clock, P. M., on the premises, three. lots of land, with their appurtenances, situate in *Lower Dublin* township, *Philadelphia* county, and village of *Bustleton,* on the turnpike road, eleven miles from *Philadelphia.*

" Lot, No. 1; Whereon is erected a large stone and frame tavern house, stone stabling and frame sheds, two wells of good water, one of which has a pump in it.

" Conditions made known at the time of the sale, by

" *Joseph. Paul,*　} Executors.
" *Jonathan Wainwright,* }

" *Feb.* 2d, 1824.

" The conditions of sale of the real estate of *Thomas Paul,* deceased, are, one-half of the purchase money to be paid on the 1st day of *April* next, the remainder to be paid on the 1st day of *April,* 1825, with interest, to be secured by bond and mortgage on the premises. If the purchaser fails to comply with the conditions of sale, the property will be sold again at the risk of the purchaser.

Signed, " *Joseph Paul,*　} Executors.
" *Jonathan Wainwright,* }

" *Bustleton, Feb.* 17th, 1824.

" Lot, No. 1. Seventeen hundred and fifty dollars.

Signed, " *Joseph Wilson,*
" *John Shallcross.*

" That the defendants failed to comply with their agreement, and on the 13th of *May,* 1824, the plaintiffs tendered to the defendants a deed duly executed for the property, and a bond and mortgage to be by them executed; but the defendants would not execute them, nor did they pay any part of the purchase money.

" That the property was readvertised for sale upon the 14th day of *June,* 1824, on account of the default of the former purchasers, and at their risk and expense: that on the said 14th day of *June,* 1824, previously to such resale, the defendants entered into the following agreement, viz.—

" Will be sold at public vendue, on Monday the 14th of *June,* 1824, at two o'clock, P. M. on the premises, a tavern house and lot of land, with the appurtenances, situate in the village of *Bustleton,* in *Lower Dublin* township, *Philadelphia* county, on the turnpike road, eleven miles from *Philadelphia.* The tavern house is large, part of stone and part of frame, with stone stabling and frame sheds, two wells of good water, one of which has a pump in it.

N. B.—The above property is to be sold on account of the default of the former purchasers, and at their risk and expense; conditions made known at the time of sale, by

"*Joseph Paul,*　} Executors to the estate of
"*Jonathan Wainright,* } *Thomas Paul,* deceased.

"*May* 27th, 1824."

(Paul and another, Executors of Paul, *v.* Shallcross and another.)

" Conditions of sale.—One-half cash on the 1st day of *July;* the balance in twelve months from this date, with interest, and to be secured by a bond and warrant of attorney, and a mortgage on the premises. If the purchaser fails to comply with the conditions of sale, the property may be sold again at the risk and expense of the purchaser.

"*June* 14th, 1824."

"*John Shallcross* and *Joseph Wilson,* agree with the executors as follows:—That they will take the above named property at their former purchase of one thousand seven hundred and fifty dollars; six hundred dollars to be paid on the 1st day of *August,* upon which the deed is to be executed, and the balance to be secured by a bond and warrant of attorney, and mortgage on the premises, payable in one year, with interest: That the property shall be immediately insured in some insurance office in *Philadelphia,* at the expense of the said *Shallcross* and *Wilson,* and the policy deposited with the executors; and that one hundred dollars shall, within two weeks, be deposited in the hands of the executors, which one hundred dollars shall be forfeited in case these terms are not complied with. The expenses occasioned by their non-compliance, to be paid by the said *Shallcross* and *Wilson.*

"*John Shallcross,*

"*Joseph Wilson.*

" *June* 14th, 1824."

"At the same time, *John Northrop* entered security for the performance of the defendants, as follows, viz.—

" I engage that the above one hundred dollars shall be deposited within two weeks from this day.

Signed, "*John Northrop.*

"*June* 14th, 1824."

" In consequence of the said agreement, the contemplated sale did not take place. The plaintiffs tendered the defendants no deed or other paper, relating to the sale of the 14th of *June.*

" The defendants did not pay or deposit the one hundred dollars, nor insure the property, nor pay, or secure the purchase money, nor any part thereof; nor did *John Northrop* comply in any respect with his engagement. The plaintiffs instituted a suit against *Northrop* to *September* Term, 1824, No. 456, and obtained judgment, but issued no execution.

" The plaintiffs advertised the property for sale on the 9th day of *December,* 1824, on account of the default of the former purchasers, and at their risk and expense, and sold it to *John Dickinson* for one thousand three hundred dollars. The expenses of the re-sale amounted to sixty-six dollars and ninety-two cents. The plaintiffs filed a paper, stating, that they had always considered the judgment against *Northrop* as a security for so much, and agreeing to

(Paul and another, Executors of Paul, *v.* Shallcross and another.)

release the same upon the payment of four hundred and fifty dollars, with interest and costs of suit. The jury find for the plaintiffs four hundred and fifty dollars, if the court should be of opinion, that in point of law upon the above facts, they could recover that amount; and if not, for the plaintiffs one hundred and sixty-six dollars and ninety-two cents."

The court entered judgment for one hundred and sixty-six dollars and ninety-two cents, upon which the plaintiffs took out a writ of error, and assigned for error, that the court gave judgment for the plaintiffs for one hundred and sixty-six dollars and ninety-two cents, when they ought to have given judgment for the plaintiffs for four hundred and fifty dollars.

*P. A. Browne,* for the plaintiffs in error, made the following points:—

1. On the 13th of *May,* 1824, the plaintiffs' right of action for a breach of the agreement of the 17th of *February,* was complete.

2. The sale intended to have taken place on the 14th of *June,* was only to ascertain the amount of damages.

3. That the sale was prevented by the defendants, who came forward and confirmed their purchase, but claimed, and obtained an extension of time for payment.

4. All the acts under the agreement of the 14th of *June,* were to have been done by the defendants, and they were all omitted to be done by them, and consequently,

5. The plaintiffs had a right to recur back to their original agreement of the 17th of *February.*

6. The sale of the 9th of *December,* was only to ascertain the damages.

7. No tender of a deed was necessary.

8. The notice to one defendant was sufficient, as the two acted jointly.

9. The suit and judgment against *Northrop* were only to enforce the deposit.

*Davis* and *J. S. Smith,* for the defendants in error, contended, that the first and second contracts were inconsistent with each other; the latter contains a penalty, in the nature of stipulated damages, to be paid on failure to comply with its terms. If, therefore, the first agreement was not absolutely rescinded by the second, the plaintiffs, by pursuing *Northrop,* the security, had elected to go upon the second, and could not now proceed upon the first. *Co. Litt.* 146, *a. Patterson* v. *Swan,* 9 *Serg. & Rawle,* 16. At all events, the plaintiffs were bound to tender a second deed, before bringing action.

The opinion of the court was delivered by

Huston, J.—This was a judgment on a special verdict. On the 17th of *February,* 1824, certain property was sold in pursuance of an advertisement by the plaintiffs as executors. The advertisement

(Paul and another, Executors of Paul, *v.* Shallcross and another.)

stated, that the conditions of sale would be made known at the time of the sale. They were as follows:—

"The conditions of the sale of the real estate of *Thomas Paul*, deceased, are, one-half of the purchase money to be paid on the first day of *April* next; the remainder to be paid on the 1st day of *April*, 1825, with interest, to be secured by bond and mortgage on the premises. If the purchaser fails to comply with the conditions of sale, the property to be sold again at the risk of the purchaser." Signed by the plaintiffs. Dated, *Bustleton*, 17th of *February*, 1824.

Under this was written, "Lot No. 1, seventeen hundred and fifty dollars;" and this was signed by the defendants.

The defendants failed to comply with this agreement; and on the 13th of *May*, 1824, the plaintiffs tendered to the defendants a deed, duly executed for the property, and a bond and mortgage to be executed by the defendants, who did not execute the said bond or mortgage, or pay any part of the purchase money.

The plaintiffs again advertised the property for sale on the 14th of *June*, 1824, describing lot No. 1, as in the former advertisement, with this addition: "N. B. The above property is to be sold on account of the default of the former purchasers, and at their risk and expense; conditions made known at the time of the sale," and signed by the plaintiffs. Dated the 27th of *May*, 1824.

On the day of sale the following conditions were put up:—

"Conditions of sale.—One-half cash on the 1st day of *July*; the balance in twelve months from the date, with interest, and to be secured by a bond and warrant of attorney, and a mortgage on the premises. If the purchaser fails to comply with the conditions of sale, the property may be sold again at the risk and expense of the purchaser."

There was no sale by public vendue, but on the 14th of *June*, the day of sale, a paper, in the following words, was drawn and executed.

"*John Shallcross* and *Joseph Wilson* agree with the executors as follows: That they will take the above named property at their former purchase of one thousand seven hundred and fifty dollars; six hundred dollars to be paid on the 1st of *August*, upon which the deed is to be executed, and the balance to be secured by a bond and warrant of attorney, and mortgage on the premises, payable in one year, with interest: That the property shall be immediately insured in some insurance office in *Philadelphia*, at the expense of the said *Shallcross* and *Wilson*, and the policy deposited with the executors; and that one hundred dollars shall, within two weeks, be deposited in the hands of the executors, which one hundred dollars shall be forfeited in case these terms are not complied with; the expenses occasioned by their noncompliance to be paid by the said *Shallcross* and *Wilson*." Signed by both defendants. *June* 14th 1824.

(Paul and another, Executors of Paul, *v.* Shallcross and another.)

Immediately below was written:—"I engage that the above one hundred dollars shall be deposited within two weeks from this day.

                                      Signed, *"John Northrop.*

*"June* 14th, 1824."

I have said, no public sale took place. The plaintiffs tendered to the defendants no deed or other writing, relating to the sale of the 14th of *June.* The defendants did not deposit the one hundred dollars, nor insure the property, nor pay any money, nor offer to pay any. *John Northrop* did not pay the one hundred dollars, but was sued, and judgment recovered against him for that sum, in suit No. 456, to *September* Term, 1824.

The plaintiffs advertised the property for sale on the 9th of *December,* 1824, on account of the default of the former purchasers, and at their risk and expense, and sold it to *John Dickinson* for one thousand three hundred dollars. The expenses of the resale were sixty-six dollars and ninety-two cents. The jury found a verdict for the plaintiffs for four hundred and fifty dollars, if the court should be of opinion, in point of law on the above facts, that they could recover that sum; if not, for the plaintiffs for one hundred and sixty-six dollars and ninety-two cents. The court entered judgment for this latter sum.

The plaintiffs stated, and filed in writing, that they had always considered the judgment against *Northrop,* as a security for so much, and agreeing to release the same on the payment of four hundred and fifty dollars, with interest and costs of suit. The plaintiffs brought this writ of error, and assigned for error, that judgment ought to have been entered for the larger sum. The plaintiffs' counsel contended, that it was legal to advertise on these terms: That on failing to comply with the terms, the difference should be paid by the bidder: That the purchasers having agreed to this, the difference between the first and last sale, were stipulated damages: That the second agreement was not a relinquishment of this part of the conditions of the first sale: That the change of the terms was only to make it conform, as far as possible, to the terms of the first; and that the conduct of the defendants showed, their last agreement was only a fraud on the plaintiffs.

There was a time, when the penalty in a bond, or article of agreement, was said to be stipulated damages, and was so at law. Chancery Courts, and chancery powers were for a long time founded on, and supported by the necessity of relieving from this. I do not say, that any agreement, or any device, or form of sale, or of contract, does or can exist, which in any well regulated government, will have the effect, in all cases, here contended for. If a bond, an article of agreement under seal, or a mortgage, all of which once had this effect, and all of which are as positive in their terms as language can be, and are as solemn instruments as men can execute, have not this effect, and experience has proved the absolute

(Paul and another, Executors of Paul, *v.* Shallcross and another.)

necessity of relief from their terms, and they now only produce justice according to the facts and circumstances of the case; it is not easy to give a good reason why less solemn instruments, or parol contracts, should be, in law, different; but it is not necessary to decide the matter in this case. If this condition could be binding, the second sale must not be clogged with any terms likely to lower the price; and I am not prepared to say, that the clause in the conditions of the second sale, that the balance should be secured by a bond, and a *warrant of attorney,* and mortgage, which must mean a warrant of attorney to confess judgment, was not an essential variance of the terms of sale likely to deter bidders, to lessen the price; but I do not go on that either. The agreement of the 14th of *June,* was a private, not a public sale. Its terms are as plain as words can make them, and except, as to price, are in all respects different from those of the first sale, and from those set up as the terms of the second public sale. The sums payable, and times of payment, are different; the insurance of the property is different; no resale is mentioned, but an absolute forfeiture is agreed on, and security is required and given; in short, it was an entirely new and distinct contract. The words, " *agree to take the property at their former purchase, of one thousand seven hundred and fifty dollars,*" are not the contract, but part of the contract, modified by every word which follows.

We cannot, in this case, consider this second contract as a fraud, for it is not so found in the special verdict; and the facts do not warrant the inference, if we could draw one of that kind.

Every contract may be waived, or varied by the parties to it. When a first contract is declared by a party to be at an end, as the first sale was here by the second advertisement, the parties may still come to another agreement. When the new agreement is in itself complete, contains precise stipulations as to what shall be the effect, on certain contingencies, and these effects are to be different from what was stipulated by the contract which had been declared void, I know of no rule of law, or reason, which will justify a court in saying, that all the terms of the first agreement are still in force, and that the latter agreement is only cumulative. If this were said, nothing could be so unsafe as to enter into new articles with one who had before contracted. Why was not the first agreement complied with? Who refused to complete it? The defendants. Why did they make a new agreement? To get different and better terms. But if the plaintiffs' construction is adopted, this can never be. I am of opinion, the second was an entirely new agreement: That the defendants are bound by it, and not by the first, and that the judgment of the District Court was right.

Judgment affirmed.