## Ramsay, Assignee, Appellant, *v.* Hersker.

[Marked to be reported.]

*Assignee for the benefit of creditors—Sale—Notice.*

Where a statute requires that the notice of a sale by an assignee for the benefit of creditors must be given for twenty days, a purchaser at such a sale will be justified in declining to take title where only fifteen days notice was given.

*Confirmation of assignee's sale.*

A sale by an assignee for the benefit of creditors must be reported to and confirmed by the court before it is complete, and until the sale is thus confirmed a purchaser will be justified in declining to take the title.

*Resale on different terms—Liability of first purchaser.*

Where a resale is not on the terms of the first sale, the basis is shifted, and the purchaser at the first sale cannot be held liable for any difference between the prices at the two sales.

At the first of two sales an assignee for the benefit of creditors advertised and sold a complete and absolute legal title. At the second sale he sold only the right, title and interest of the assignor in the property. At the first sale the property was advertised as having two slaughter houses upon it; at the last sale it was sold as having only one. *Held,* that the purchaser at the first sale was not liable for the difference between his bid and the decreased price which the property brought at the second sale.

Argued Feb. 14, 1893. Appeal, No. 43, July T., 1892, by W. P. Ramsay, assignee for benefit of creditors of Jonas Hein, from judgment of C. P. Schuylkill Co., Jan. T., 1889, No. 126, on verdict for defendant, John Hersker. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and McCOLLUM, JJ.

Assumpsit for difference between bid at sale of real estate by order of court, and price brought by property at resale.

The facts appear by the opinion of the Supreme Court and by the charge of the court below, which was as follows, by PERSHING, P. J.:

["I think it is a fatal objection to the right of the plaintiff to recover here, that the undisputed evidence shows that notice was not given to all of the lien creditors. It is an admitted fact that the Philadelphia & Reading Railroad Company was a lien creditor; that by articles of agreement they had sold the real estate to Jonas Hein, as I understand it to be ad-

mitted here, and the balance of the purchase money, $245, was not paid, and therefore was a lien upon this real estate. That creditor is not mentioned in the petition; no notice was given to this company of this intended application, and therefore the act which authorizes the sale was not complied with.] [1] [It is true, when the day of sale came around, that the assignee did give notice, as he alleges, that the property would be sold subject to this lien, and a verbal notice was repeated by the auctioneer at the sale; and it is claimed that Mr. Hersker himself was personally informed of the fact that it was sold subject to that lien. There is a disputed fact here as to whether Mr. Hersker did have this notice or not. He denies any knowledge of such notice, but in the view I take of the case, it is not necessary to refer that fact to you.] [5] The fact remains that no notice was given to this creditor. . . .

["There is no authority anywhere that the assignee may sell subject to any lien except first mortgage or lien of purchase money due to the commonwealth, which is not the case here. Therefore my view of it is, not only that the action falls here because the proper notice was not given to the lien creditors as required by the act, but that this property was sold subject to a lien, when the order of court was to sell it discharged of all liens, so that the purchaser would take it clear of all liens and encumbrances, and I regard this of itself as being fatal to the right to recover here, because it is an admitted fact that the act was not complied with.] [2]

["There are other reasons assigned here, and one is that a change was made in the advertisement.] [4] The conditions surrounding the transaction do not appear the same at the last sale as at the first sale. [When the assignee came into court and made his return that Mr. Hersker would not comply with his contract, and obtained an order to resell, that was a rescission of the contract between him and Hersker, because otherwise he would have had a right to bring his action for the whole of the purchase money. But having seen proper not to do that and having come into court and asked for an order to resell, that order was a rescission of the contract which existed between him and Hersker before. As I understand the claim that is made here upon Hersker, it is not for the purchase money, but for the difference in the price brought at the first

sale and the price brought at the last sale, $105.   It is for this difference in price that this action is brought, if I understand it.] [7]   (Mr. Schalck : ° Yes, sir ; in addition to the $245 due the Reading Company.   He added that as part of his claim so as to make it three hundred and sixty and something.)   So far as that is concerned [I can see no ground whatever upon which the assignee could recover the $245.   If the property was sold subject to this lien, it was not that the lien should be paid to the assignee.   Hein had no claim upon it at all, but the condition was that it was to be sold subject to the lien, and the lien to be paid to the owner, and as far as that part of the transaction is concerned I can see no ground whatever for the assignee suing for this $245.   He says he paid this claim afterwards, after the contract was entered into between him and Hersker. But I speak of the suit generally, whether it includes the $245 or not.] [8]   [It seems to be an admitted fact here that in the first sale two slaughter houses existed upon the property that was advertised ; two lots were to be sold ; whereas in the last sale the property was advertised as containing but one slaughter house and but one lot was sold, as I understand it.   (Mr. Schalck : Two lots in the last sale, but only one slaughter house.)   Then the difference would be that in the first sale there were two slaughter houses advertised upon which Hersker bid, and in the last sale but one slaughter house advertised. Now, what would be the effect of that ?   Would a purchaser be willing to pay more for two slaughter houses than he would for one ?   Would the conditions be equal where in the first sale where Hersker bid there were two slaughter houses, and where the last purchaser bought only one ?   Is it likely that the property would bring as much as at the first sale, when there was one slaughter house less upon it.   In order to hold a party in cases of this kind, it is necessary that the conditions of sale should be the same at the last sale as at the first, because if the conditions are changed, if the surroundings are not the same, then Hersker bid from one point of view and the purchaser who bid last would bid from another point of view, and therefore this difference in the advertisements is an element in my mind in coming to the conclusion I have.] [4]

"  [There is another thing required by this statute, and that is the notice of sale must be given for twenty days.   The evi-

dence here shows that the notice was only given for fifteen days, that is that the property was advertised on three successive Saturdays. Take for illustration, Saturday is the first, the next Saturday the eighth and the third insertion would be the fifteenth. There would be three insertions in three separate weeks in only fifteen days. I am clear that this statute requires that there shall be the full twenty days notice, just the same as in the orphans' court. Fifteen days notice in my mind was not the legal notice required by law, and therefore was not a notice at all. I know that in a sheriff's sale, where the act provides it shall be advertised three successive weeks, the courts, a great many years ago, decided that one insertion each week for three weeks was sufficient, but they have never decided that in any other case where a time was specified for a sale. In the matter of the division of North Whitehall Township, 47 Pa. 156, the act under which that proceeding was carried on required three weeks previous notice. The commissioners gave a notice one week after another in three successive weeks. The Supreme Court held that the statute meant twenty-one days, which was three weeks, and that a day less than three weeks was no notice at all. The whole proceeding in that case was swept away by the Supreme Court, upon the ground that when the legislature said three weeks notice, nineteen days notice was not enough. Here there were but fifteen days notice, three successive Saturdays. Therefore upon the ground that the notice was not such as required by law, and that legally it was no notice, we rule against the legality of the sale made by the assignee in this case] ; [3] [and also upon the other ground, that it appears to be conceded that the sale was never confirmed by this court.] [9]

" In order to enable this case, if it goes to the Supreme Court, to be heard upon all its sides, I have been disposed to admit almost everything that was offered so as to get out every fact that could possibly be connected with the case. All I desire now in talking to you is to say enough to explain my reasons for coming to the conclusion which I have reached. [Now, I therefore instruct you, that so far as the action of Mr. Ramsay, the assignee, against Mr. Hersker, is concerned, your verdict should be for the defendant.] [10] That leaves one other question to which I will now direct your attention.

" The evidence is that Mr. Hersker paid, at the time the pro-

perty was knocked down to him, ten per cent of the bid, that
is, $215.50, and he claims that the assignee in the estate which
he represents is indebted to him in this amount; that the sale
made by the assignee to him, Hersker, was a void sale; that
he got nothing by it.   [He was never required to take the deed
that was offered, never offered to him practically, but Mr. Ram-
say says he offered it to Mrs. Hersker.   This deed, it appears,
was never acknowledged; it was informal to that extent at
least; there was no acknowledgment to it such as should have
been appended to it,] [11] and that having acquired nothing
by the purchase the defendant claims he is entitled to have his
money refunded.   [I would suppose he would be entitled to
recover back his money.   At any rate we instruct you for the
present, that he has a right to recover back his money which
he paid to the assignee at the time this property was knocked
down to him.] [12]

"It is testified here by both Mr. Ramsay and Mr. L'Velle,
that at the time they had their interview in Mr. Ramsay's office,
when Mr. Hersker brought Mr. L'Velle there as his attorney
about the trouble about the slaughter houses upon the property
which he bought, it was said at that time that Mr. Hersker
would sue the assignee to get his money back, and the assignee
said he was going to sue Hersker for damages for not comply-
ing with his bid; and it was said there that the whole matter
had better be disposed of by one action.   Both parties testified
to that, that both claims had better be disposed of in the same
trial.   I think it is very wise that they should be.   So this ques-
tion is submitted to you.

"The claim here is for $215.50 with interest.   My impression
is defendant has no right to recover interest.   This money was
paid into the hands of the trustee, who was not acting for him-
self, but acting for others.   It was paid to him in pursuance of
this sale made of this property of Hein to Mr. Hersker, and
now my own impression at this moment is, that conceding de-
fendant's right to recover the money back which he paid, he
has no right to recover interest.   It was paid to a trustee who
was appointed by the court to make this sale.   It is not like
the case of an ordinary debtor.

"[We say to you that the amount he would have a right to
recover would be $215.50, the amount which he paid to the

trustee or assignee. Your verdict therefore will have to be shaped in order to meet this state of things under the defalcation act; that is to say, your verdict as I have instructed you will be for the defendant, and then in connection with that, you will certify that the defendant has paid to the plaintiff $215.50, which the plaintiff is indebted to him. Make that in the form of a certificate, viz. : That you find for the defendant, and certify that the plaintiff is indebted to the defendant in the sum of $215.50."] [13]

Verdict and judgment for defendant for $215.50. Plaintiff appealed.

*Errors assigned* were (1–13) instructions, quoting them.

*Wm. A. Marr, W. P. Ramsay* with him, for appellant.—There was no material difference in the terms of the two sales : Cooper v. Borrall, 10 Pa. 494; Spang v. Schneider, 10 Pa. 193; Wood v. Levis, 14 Pa. 13.

There being no dispute as to defendant having, within the thirty days, positively declared that he would not comply with the conditions of sale, or accept the property at his bid, it was unnecessary to tender him a deed, and would have been bad practice to have had the sale to him confirmed.

If defendant bid under a misapprehension of his rights, or if the description in the advertisement was incorrect, his remedy was to apply to the court on the return of the assignee to the order of sale, to set aside the sale; he could not refuse to comply with the conditions of sale, and then set up misapprehension or defective description as a defence to the action to recover the loss occasioned by a resale : Davis v. Baxter, 5 Watts, 515.

Defendant has waived his rights to this defence by not having moved to set aside the sale : Crawford v. Boyer, 14 Pa. 380 ; Allen v. Gault, 27 Pa. 473.

*A. W. Schalck,* for appellee.—Appellant's cases are of sheriff's sales, and all suits brought by the sheriff against the purchaser in default at such sales. In orphans' court sales confirmation is necessary : Scott Intestate Laws, 2d ed., 616 ; 1 Rhone's O. C. Pr. 612.

After confirmation of the sale, and a failure on the part of the purchaser to comply with its conditions, compliance may be enforced by three courses: (1) By an action in the common

pleas for the purchase money; (2) by an application to the court to set aside the confirmation of the sale and order a resale of the property; (3) by a decree for specific performance: 1 Rhone's O. C. Pr., p. 613, pl. 110. There is no authority or precedent for any proceedings against a purchaser before confirmation of sale by the court: Trickett, Assignments, ed. of 1888, § 124; Strickler's Est., 2 Pearson, 307.

A sale by an assignee is substantially subject to the same control of the court as one made by an administrator, etc.: Carver's Ap., 89 Pa. 276; Tomlinson's Ap., 90 Pa. 224; Herbst and Buehler's Ap., 90 Pa. 353: Burkholder's Ap., 94 Pa. 525; Brownsville Bank's Ap., 96 Pa. 347; Troth's Est., 1 Chester Co. 89; Hamilton's Est., 51 Pa. 58; Greenough v. Small, 137 Pa. 132.

An equitable lien for unpaid purchase money is discharged by assignee's sale, and is payable out of the proceeds: Xander's Est., 7 Pa. C. C. R. 482; s. c. 2 Northampton Co. R. 93. Notice to all lien creditors is necessary: Dodson's Est., 6 Pa. C. C. R. 617.

OPINION BY MR. CHIEF JUSTICE PAXSON, February 27, 1893:

The appellant is the assignee of Jonas Hein in trust for the benefit of the creditors of the latter. In pursuance of an order of the court of common pleas, he proceeded to sell at public sale, on the terms and conditions set forth in said order, the real estate of his assignor for the payment of debts. The property designated as No. 2, in said petition, was sold to John Hersker, the appellee, for the sum of $2,155, subject to the claim of the Philadelphia & Reading Coal and Iron Company for unpaid purchase money, amounting to $245.33. The appellee failed to comply with the terms of sale, and refused to accept the property struck down to him at his bid. Whereupon the appellant obtained an order of court to resell the same. At the second sale the property brought less than the bid of the appellee at the first sale, and this suit was brought by the appellant against him to recover the difference.

The appellee was not obliged to take the property at his bid unless he got a good marketable title. We think there were irregularities in regard to the first sale which justified the appellee in declining to take the title. One was, that the notice

given of the sale did not comply with the law. The statute requires that the notice of sale must be given for twenty days, whereas in this case only fifteen days notice was given. There were other irregularities referred to by the court below which we need not pass upon, for the reason that, conceding the first sale to be regular, the plaintiff is not entitled to recover. In the first place, the sale to the appellee was not reported to and confirmed by the court. Until this is done the sale by the assignee under the order of court is not complete. In this it is unlike a purchase at a sheriff's sale which requires no confirmation. A sale by an assignee is substantially subject to the same control of the court as one made by an administrator. Carver's Ap., 89 Pa. 276; Tomlinson's Ap., 90 Id. 224; Herbst's Ap., Id. 353; Burkholder's Ap., 94 Id. 522; Appeal of the Brownsville's Deposit and Discount Bank, 96 Id. 347.

Aside from this, the variance between the nature and character of the title sold at the first sale, and that sold at the last sale, and also in the description of the buildings and improvements as advertised and sold at the two sales, is fatal to the plaintiff's right to recover in this case.

At the first sale the assignee advertised and sold a complete and absolute legal title. At the second sale he sold only the right, title and interest of the assignor in the same. The fact that the title was thus described at the second sale was calculated to cast a cloud upon it. At the first sale the property was advertised as having two slaughter houses upon it; at the last sale it was sold as having only one. Where the resale is not on the terms of the first the basis is shifted and the first purchaser cannot be held liable: Weast, Assignee, v. Derrick, 100 Pa. 509. The second sale must not be clogged with any terms likely to lower the price, as by requiring the purchaser to give a judgment bond instead of the plain bond before required: Paul, Executor, v. Shallcross, 2 Rawle, 332. Or where the first sale was half cash and half in one year, and the second sale was for all cash: Banes v. Gordon, 9 Pa. 426. "It is very clear that a defaulting purchaser at sheriff's sale is not liable to respond in damages for loss on resale of the property, if it appears that under the first sale he would have acquired a more valuable title than that which passed to the purchaser at the last sale, or that the terms of the first sale were

more advantageous to the purchaser than those of the resale. The obvious reason of this is, that the inferior quality of the title, or the less advantageous terms of sale would naturally effect a reduction of price, and we would be left without any reliable standard by which to measure the loss sustained by the refusal of the purchaser at the first sale to make good his bid." Hare v. Bedell, 98 Pa. 485. We need not multiply authorities.

Judgment affirmed.