# Cake's Appeal.

| 110 | 65 |
| 217 | ¹649 |
| 110 | 65 |
| e 35 SC | 111 |

1. The report of an Auditor, upon a question of fact, approved by the court below, may be set aside by the Supreme Court when the questions decided are inferences from clearly proved fact, or conclusions from reasoning, and the Supreme Court is of opinion that the Auditor was in error.

2. Certain persons, who were the relatives of a decedent, claimed from her estate a sum of money alleged to be due to them under a parol contract made by her with them for her support.    The only evidence of the contract adduced before the Auditor to whom the matter had been referred, was that of A., the brother of the claimants, who testified that he had made the contract, and was authorized by the claimants to act for them.    There was no other evidence of his authority to act, than his own statement.    Claimants for several years supported the decedent in accordance with the terms of the alleged contract.    Some time afterwards A. wrote a letter to a third party, stating that the appellants had made no charge for support prior to a certain date.    This letter was written without the knowledge of the claimants, and probably without their authority:

*Held,* reversing the report of the Auditor approved by the court below, that there was sufficient evidence of authority in A. to contract and of a contract, and that the claimants were not bound by the statements in the letter:

*Held,* therefore, that they were entitled to recover the amount claimed, except in so far as their claim was barred by the Statute of Limitations.

April 30th, 1885.    Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ.    TRUNKEY, J., absent.

14 OUTERBRIDGE—5

APPEAL from the Orphans' Court of *Northumberland county* : Of January Term 1885, No. 430.

This was an appeal by Sarah M. Cake and Lucetta B. Cake from a decree of said court, confirming the report of an Auditor appointed to make distribution of the balance in the hands of the administrator of the estate of Margaret Schuyler, deceased.

The following facts appeared before the Auditor (G. W. Zeigler, Esq.) :

Margaret Schuyler, the decedent, was a widow, living in the borough of Northumberland. She died in February, 1883, in her 87th year, leaving as her heirs and next of kin, three grandchildren, W. R. Frick, Elmer Schuyler, and Mary Schuyler. The decedent had no other property than a lot of land on which were two frame houses, old and out of repair. In one of these she lived, and the other she rented when she could find a tenant. During the lifetime of Mrs. Cake, her sister, the decedent lived mainly with her. At her death, which took place ten years before the decedent, the latter went back to her own house, refusing to live with her nieces, Sarah and Lucetta Cake. From that time until her death the decedent was supported and cared for mainly by the Misses Cake, who supplied her with provisions, fuel, etc., the small income from her property being used in taxes and repairs. Whenever she had money she sent it to her grandchildren.

At the audit of the decedent's estate the Misses Cake put in their claim for boarding her from the time of their mother's death at two dollars and a half a week, under an express contract made by their brother, H. L. Cake, on the day of their mother's funeral. The decedent was told by H. L. Cake, that he had no doubt that his sisters "would have to go on providing for her just as they had been doing before my [his] mother's death." The decedent answered, "I cannot accept from the girls without compensation." In a further conversation the decedent asked, "how much rent the house would bring per week." Cake replied, "About two dollars and fifty cents per week," to which the decedent rejoined, "I will give that, but I will live in my own house." This evidence of a contract was given by oral testimony of Cake himself. On the other hand, a letter from Cake to Colonel J. G. Frick, of Pottsville, was offered in evidence, in which the writer said that for the future his aunt would be looked after by his mother's children as she had been in the past, but it would be a great relief if her granddaughter could come and care for her.

Another letter was given in evidence from Cake to Frick,

stating that until the time decedent came from Pottsville (March 3d, 1880), his sisters had made no charge against her.

The Auditor rejected the claim on the ground that the claimants had failed to show any authority from them to Cake to make such contract, and that no contract had been made. Exceptions were filed to this report, which was, however in the main sustained by the court. The case was, however, referred back to the referee to find the value of the provisions, etc., furnished, as the claimants were entitled on a *quantum meruit.* The Auditor allowed a dollar and a half a week from March 3d, 1880. This sum the court increased to two dollars, and confirmed the Auditor's report. The claimants thereupon took this appeal, assigning for error the action of the court as above.

*S. P. Wolverton*, for appellants.

*Geo. B. Reimensnyder*, for appellees.
This court will not set aside an Auditor's report approved by the court below, the only exceptions being when the evidence is clear that a plain mistake has been made, and when the questions decided are inferences from clearly proved facts, or conclusions from reasoning. This case does not fall within either exception.

Claims against decedent's estates will be rejected if they appear not to have been contemplated in the lifetime of the decedent; or if the service was a matter of charity; or if a family relationship existed: Abercrombie's Estate, 1 W. N. C., 233; Wilson's Estate, 8 Phila., 180; Neel's Adm. *v.* Neel, 9 P. F. S., 347.

Mr. Justice PAXSON delivered the opinion of the court, May 25th, 1885.
The report of a Master upon questions of fact, approved by the court below, will not as a general rule be set aside by this court. But when the questions decided are inferences from clearly proved facts, or conclusions from reasoning, the report has not the same weight: Phillip's Appeal, 18 P. F. S., 130; Sproull's Appeal, 21 Id., 137; Moyer's Appeal, 27 Id., 482; Hindman's Appeal, 4 Norris, 467.

The learned Auditor has found that there was no contract between the appellants and Mrs. Margaret Schuyler. Yet the witness, H. L. Cake, who was called by the appellants, distinctly proved that a contract was made by him as the agent of the appellants, with Mrs. Schuyler, by which the latter agreed to pay appellants the sum of $2.50 per week for her board. We need not repeat what the witness said, as it is not

disputed that he so testified. Nor was his testimony contradicted. The Auditor, however, disregarded this evidence, and as before stated, found the fact the other way. Was he justified in doing so under the circumstances?

If the credibility of the witness had been attacked, or the Auditor had found he was not a credible witness for any sufficient reason, we would not have felt at liberty to disturb his finding. But he has given other reasons for his conclusions and they are not satisfactory. One is that there was no evidence except that of the witness himself that he was acting for the appellants. The contract was oral, and the evidence of the agent as to his authority was sufficient. Besides, the appellants acted under the contract and are now claiming under it. Surely this is sufficient evidence of authority in the agent. It amounts to ratification. Another reason is that neither of the appellants was named in the conversation which occurred at the time of making the contract, and that the appellants were in the house at the time and might have made it themselves. The witness however, referred to the appellants as his sisters, and there can be no possible doubt as to who he meant. That they were conveniently at hand and might have engaged in the conversation has no weight; they may have had their own reasons for not doing so. That Mr. Cake did not formally state to Mrs. Schuyler that he was acting as agent for his sisters is equally unimportant. There is no room for any misunderstanding upon this point, particularly in view of the evidence that what was agreed to be furnished was furnished for years by the appellants. But the greatest stress was laid upon a letter written by the witness to Col. Frick, in March 1881, in which letter he says "that up until the time Mrs. Schuyler came from Pottsville (March 3d, 1880) my sisters have made no charge against her" &c. This letter was written about seven years after the contract was made. It does not purport to be written for or on account of the appellants, or by their authority, or even with their knowledge. Yet the Auditor with a strange inconsistency, holds the appellants responsible for the admissions contained in this letter, because Col. Cake was appellant's agent, while he discredits his agency in the making of the contract. The Auditor was wrong in both conclusions. While we regard the evidence sufficient to establish the agency so far as the contract is concerned, it by no means follows that his principals would be bound by his statements in a letter, written several years thereafter, to a stranger to the transaction, and without the knowledge of the appellants. The doctrine of agency has never been carried to such a length as this. Aside from this, when Mr. Cake was asked the question whether this letter was

[Yorks's Appeal.]

written by authority of the appellants, the counsel for the appellees objected, and the evidence was excluded, although for what legal reason is not clear. He was allowed to say enough, however, in explanation of the letter, to show the strong probability that it was written of his own motion, and to serve a purpose. Under these circumstances the statement contained therein that the appellants had made no charge for Mrs. Schuyler's board up to a certain period, was of little value to contradict the witness, and of no value whatever as an answer to the claim of the appellants.

The court below sustained the finding of the Master that there was no contract, but being of opinion that there was sufficient evidence to justify a recovery upon a *quantum meruit*, sent the case back to the Master for a re-hearing. The Master found that $1.50 per week was ample compensation for the board furnished. This sum does not seem extravagant in view of the fact that during a considerable portion of the time it included the board of a servant. The court, however, was of opinion that $2 per week should have been allowed, and the heirs agreed to this sum for the time for which a recovery was permitted.

We are of opinion that the contract for $2.50 per week was sufficiently established, and that the appellants should be allowed this amount for so much of the time as is not covered by the Statute of Limitations.

> The decree is reversed at the costs of the appellees, and it is ordered that distribution be made accordingly.