# Colket's Estate.

*Decedents' estates—Promissory notes—Contribution—Evidence.*

On a claim against a decedent's estate for contribution, it appeared that claimant had made in decedent's lifetime four promissory notes for $5,000 each, payable to his own order, and indorsed by decedent, and that decedent had made one note for $5,000 to his own order, and indorsed by himself and the claimant. The claimant after the death of the decedent paid all of the notes, and asked contribution against

the estate for one-half the aggregate amount. Plaintiff offered testimony by witnesses other than himself which tended to show that he. and the decedent were interested in a mining operation, although the decedent's interest was much less than that of the claimant; that large amounts had been advanced on the operation, and at the time the notes were given there was urgent need for more money; that the decedent manifested more interest and anxiety that the money should be raised than claimant or any other stockholder; that he visited claimant's office almost daily, and importuned him to raise the money; that decedent suggested that the easiest and only way was to borrow the money; that the claimant reluctantly consented to borrow the money; and that the note made by decedent himself was so made to save the bank which discounted it from exceeding its ten per cent limit. *Held,* that the evidence was sufficient to show that the two men agreed jointly to raise $25,000 for the mining venture, and that the plaintiff was entitled to contribution against the decedent's estate.

Argued March 26, 1907. Appeal, No. 99, Jan. T., 1907, by John W. Woodside, from decree of O. C. Phila. Co., April T., 1906, No. 152, dismissing exceptions to adjudication in Estate of George H. Colket, deceased. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Exceptions to adjudication.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in refusing to sustain the claim of the appellant for contribution from the estate of the decedent.

*Hampton L. Carson,* for appellant.—In this case this court is invited, not to review and set aside a finding of fact by the court below, not to determine a conflict depending on the weight of testimony, or the credibility of witnesses, but to review and correct errors in deductions from undisputed testimony, and to set aside conclusions from reasoning which is at war with the evidence taken as a whole: Phillips's App., 68 Pa. 130; Sproull's App., 71 Pa. 137; Hindman's App., 85 Pa. 466; Cake's App., 110 Pa. 65.

The right to contribution results from the maxim that equality is equity. The creditor may collect all the debt from the principal or any one of several sureties, or he may collect from every surety his proper proportion. If, having this right, he

collects it all from one surety, the law clothes such surety with the same power and enables him to enforce contribution : Lansdale v. Cox, 7 T. B. Monroe (Ky.), 401 ; Agnew v. Bell, 4 Watts, 31 ; Deering v. Earl of Winchelsea, 2 Bos. & Pul. 270 ; Hagertby v. Phillips, 83 Me. 336 (22 Atl. Repr. 223) ; Mulcare v. Welch, 160 Mass. 58 (35 N. E. Repr. 97).

It is clear that the right of contribution exists.   There is no necessity for an agreement.   The court below was in error as to this.   Parties are bound to contribute unless there be an agreement to the contrary.   In other words, it is unnecessary for the claimant to prove an agreement to pay the proportionate share, his right to recover depending upon the quasi-contractual relationship : Tobias v. Rogers, 13 N. Y. 59 ; Jeffries v. Ferguson, 87 Mo. 244.

*H. B. Gill*, with him *John R. Read, Silas W. Pettit* and *Louis B. Runk*, for appellee.—The claim was properly disallowed : Am. Home Savings Bank Co. v. Trust Co., 210 Pa. 320 ; Fuller v. Law, 207 Pa. 101 ; Clarke v. Allen, 132 Pa. 40 ; Martin v. Berens, 67 Pa. 459 ; Ziegler v. McFarland, 147 Pa. 607 ; Delaware County Trust, etc., Co. v. Haser, 199 Pa. 17 ; Dodge v. Chessman, 10 Pa. Superior Ct. 604 ; Kling v. Kehoe, 58 N. J. L. 529 (33 Atl. Repr. 946) ; Youngs v. Ball, 9 Watts, 139.

OPINION BY MR. JUSTICE MESTREZAT, April 22, 1907 :

This litigation arises out of a mining venture in Arizona. It appears from the evidence that John W. Woodside, the appellant, and George H. Colket, now deceased, were stockholders and directors in the Mohave Gold Mining Company, a Delaware corporation, whose mining property was in Arizona. O. A. Turner, a practical mining man, was the president and general manager of the company, and in 1903 was in Arizona superintending the development of the property.   After expending about $300,000, it was discovered by Turner that more money would be needed.   He had loaned the company $100,000, and in the fall of 1903 wrote to some of the stockholders and directors, who resided in the east, advising them of the necessity of additional funds which he thought ought to be raised by the eastern parties interested in the company. Among others, he wrote to Woodside telling him that more

money was needed to continue the development of the property. Twenty-five thousand dollars in installments of $5,000 each was remitted to Turner by drafts drawn by him on Woodside. This money was obtained on five promissory notes, each calling for $5,000, and the last renewals of which show one of them to have been made by George H. Colket, payable to his own order and indorsed by him and Woodside, and the other four to have been made by Woodside payable to his own order and indorsed by Colket. Three of the notes were payable at and discounted by the First National Bank of Huntingdon, Pennsylvania, and the other two were discounted, respectively, by the National Security Bank of Philadelphia and by the Windber National Bank of Windber, Pennsylvania.

Before the last of the renewal notes became due Colket died, and Woodside was compelled to pay them. At the audit of the account of Colket's administrator, in the orphans' court, Woodside presented a claim for $12,500, the one-half of the amount of money which was remitted by him to Turner for use in developing the Mohave company's mining property. Woodside claims that the money was raised by him and Colket at Colket's express request, for use of the company, and having been obliged to pay the full amount of the notes upon which the money was raised he is entitled to contribution from Colket's estate for the one-half of the amount he was compelled to pay. The claim was resisted by Colket's administrator, on the ground that Colket did not agree to join Woodside in raising the money which was sent west for the use of the company, that he in no way obligated himself for the payment of the money, and that there is not sufficient evidence tending to show that the liability for the money was other than that shown by the notes which disclosed a primary liability on the part of Woodside. The auditing judge disallowed the claim and he was sustained by the court in banc. Woodside has taken this appeal.

The question here is one of contribution. If Colket and Woodside raised this money jointly for the use of the company, they would then, in the absence of evidence showing the contrary, each be liable for the one-half of it. It is, therefore, simply a question of fact which must be determined from the evidence submitted to the auditing judge, whether Woodside

and Colket were acting together and jointly in procuring and remitting the money to the company for use in the development of its mines. It is to be regretted that the facts upon which the question turned are not more clearly and definitely disclosed by the evidence. Colket's death has sealed the lips of Woodside, and the stories of both men, in regard to the transaction, must forever remain untold. The rights of the parties, therefore, must be determined by such other testimony as is available.

Having presented this claim, the burden is upon Woodside to sustain it. As found by the learned auditing judge, "it may fairly be presumed that the money raised was used for the benefit of the Mohave company, and it is clear that both Mr. Colket and Mr. Woodside obligated themselves to the banks to pay the notes on which it was borrowed." The testimony clearly supports this finding. To sustain his claim, Woodside called several witnesses, and a brief reference to their testimony is necessary to determine the question of fact involved. George D. Woodside is a son of the claimant and was treasurer of the company, and he says he heard many conversations between Colket and his father, in the latter's office, with regard to raising the money. He testified that Colket suggested that the easiest and only way was to borrow the money; that his father objected to raising the money in that way, but "finally, rather than let the enterprise fall through for the small sum of twenty-five to thirty thousand dollars, which might be necessary, they agreed together that Mr. Colket and he would raise the money on their joint notes." He says he heard all the details about raising the money discussed; that Colket came into the office every day to ascertain how they were getting along, physically and financially; that Colket suggested they could borrow the money from the Penn National Bank of Philadelphia or the bank at Huntingdon, Pennsylvania, and that he saw Mr. Colket sign each of the final renewal notes.

Carl N. Gage is a director of the First National Bank of Huntingdon. He testified that Colket arranged with him and his bank for the loan of the money; that "I think it was five thousand dollars and then increased from that on;" that Colket said he would send "a note for himself and Mr. Woodside:"

that the notes of January 16, 1905, and February 17, 1905, except the printed portions of them, were in Colket's handwriting; that the paper he agreed with Colket to discount was that in which the latter and Woodside were to join; that the note discounted by the Windber Bank was secured through his bank; that to avoid exceeding their ten per cent limit his bank required Colket to become the maker of one of the notes.

Meyer Schamberg was interested in the Mohave company. He testified that he was in Woodside's office very frequently when Colket was there and heard conversations about raising money for the Mohave company; that on one occasion the latter said " we will have to send out that money," to which Woodside replied that he did not care to furnish any more money; that Colket then said " John, you cannot lay down now, we have gone too far for that, the money has to be sent out;" that Woodside again said he did not have the money to which Colket said " I will arrange for a note;" that Woodside said that he did not like to do that, but Colket said, " John, we have to do it;" that finally Woodside agreed and Colket brought in a note.

Benjamin A. Hazel, a director of the Mohave company, heard many conversations between Colket and Woodside about raising the money. He testified that the company ran out of funds and the question daily arose as to how they were going to meet Turner's demand for more money; that Colket said to Woodside " we would have to raise it, we cannot possibly let the matter go by default now when we have every assurance the mill will start shortly," and proposed that if Woodside would make the note he would indorse it and get the money from the bank at Huntingdon where he was a director, to which Woodside finally consented. He further says that one of the conversations took place in the fall of 1903, about the time of the completion of their mill, and that the amount mentioned was between $20,000 and $25,000.

O. A. Turner, the superintendent and general manager of the company, says he was on the company's property in Arizona in the fall of 1903. He testified that he went out there and found that a great deal more money was required to develop the property; that he had already loaned the company $100,000 and wrote east to some of the other stockholders

and directors to raise the additional funds; that he obtained the money by drafts on Woodside; that he drew for $5,000 at a time.

The appellee called Jacob C. Donaldson, who testified that occasionally at Colket's request he got a check from Woodside for the discount of "I think probably Huntingdon notes." The appellee also offered in evidence copies of two letters written by Colket addressed to Woodside which, it is claimed, shows that Woodside paid interest or discount on the notes on which the money for the Mohave company was raised.

Such is the material testimony in this case, and it is not contradicted. The credibility of the witnesses is not impugned and we must regard their testimony as verity. As an appellate court, therefore, we are at liberty, notwithstanding the findings of the court below, to draw our conclusions and inferences from the facts: Phillips's Appeal, 68 Pa. 130; Cake's Appeal, 110 Pa. 65. We think it is apparent that there was a joint liability on the part of Colket and Woodside for the money raised and sent to Turner for the use of the Mohave company. The testimony unmistakably shows that Colket manifested more interest and was more anxious that the money should be raised than Woodside or any of the other interested parties. He visited Woodside's office almost daily, and was continually importuning him to join in raising the money. Woodside hesitated. He thought he had already put enough money in the venture, but Colket insisted that the enterprise should not be permitted to fail by their failing to raise a small sum of money. It appears by the testimony, which is not contradicted, that Woodside reluctantly though finally agreed "that Mr. Colket and he would raise the money on their joint notes." Colket presented the notes to his own bank, secured the money, and handed it to Woodside. He attended to discounting and rediscounting the notes. He said upon more than one occasion, addressing Woodside, that we would have to raise the money.

On the part of Colket's estate, it is claimed that four of the five notes show a primary liability by Woodside, and that other facts disclosed in the case shows the same liability on the fifth note. If this were a suit by the holder of the notes, he would be entitled to hold Woodside as the maker and Colket as the

indorser of the four notes.  Such is the liability of the parties
as disclosed by the notes themselves.  But, as we have already
said, this is a claim for contribution for the money represented
by the notes, and not a suit on the notes to enforce a liability
against the maker or the indorser.  The claimant, therefore,
is at liberty to show if he can that while he is primarily liable
on the notes, yet by an agreement between him and Colket
they were jointly liable for the money raised on the notes.
In this view, the other testimony introduced in the case
becomes important and must be considered.  The claimant
having put in evidence the notes, showing a primary liability
on himself, it was incumbent upon him, in order to support
his claim for contribution, to establish an agreement disclosing
a joint liability of himself and Colket for the money raised
and remitted to Turner.

It is true that George Woodside testified that the parties
agreed that the money should be raised upon their joint notes,
but taking into consideration his whole testimony it is apparent
that he did not mean that they were to be the joint makers of
the notes, but that the names of both parties were to be on the
notes, thereby creating a joint liability, not on the notes, but
for the money raised for the company.  This is manifestly the
meaning of the language used by the witness in view of the
fact that his testimony discloses an intention on the part of
Colket and Woodside to join in furnishing the money.

We do not regard the testimony of Donaldson or the letters
offered in evidence as sustaining the appellee's contention.  It
is quite true that Donaldson says that on possibly a half-dozen
different occasions he went to Woodside at Colket's request
and got a check to pay the discount on notes.  But he further
testifies: " Q. To what notes did these visits refer, to what
particular notes; do you remember?  A. I think probably
Huntingdon notes."  It appears that Colket and Woodside
were engaged in other business requiring the discounting of
notes and, therefore, it would be simply a guess whether or
not under the witness's answer the discount received by him
from Woodside was paid on the notes which were given to
raise money for the Mohave company.  To be of assistance
to the appellee, the testimony of Donaldson should have been
sufficiently definite to identify the notes upon which the dis-

count was paid. The letters alluded to are equally uncertain and indefinite as to the notes referred to. In view of the fact that the two men were engaged in other transactions, requiring the discounting of their paper, the subject-matter of the letters is as applicable to other notes as to the notes presented by the claimant to the auditing judge. One of the letters refers to a $4,800 note which certainly was not one of the original or renewal notes on which contribution is claimed. In fact, on the argument at bar, when the attention of counsel was directed to the discount referred to in the latter, it was understood that the notes spoken of in the letter were not those on which Woodside is claiming.

We do not regard the fact that the holdings of Woodside and Colket in the Mohave company were greatly unequal as controlling or of much weight in determining whether they were jointly interested in raising the money for continuing the development of the mining property. Colket had comparatively a small interest, but the extent of the inequality of the interests of the two men does not appear. It is apparent, however, that from the large sum expended in developing the property, the parties regarded it as very valuable, and therefore Colket might, with reason, have thought that "rather than let the enterprise fall through" and lose the money he had already invested in the venture, it would be better for him to assist in raising "the small sum" proposed and secure the full development of the property. While Colket's interest in the corporation might have been comparatively small, yet it might have been about all he was worth and in his judgment, therefore, sufficient to justify the risk of a small additional sum to save it. At all events, the evidence discloses that Colket manifested more anxiety that the money should be raised than Woodside or any of the other stockholders of the Mohave company.

After a consideration of all the evidence in the case, we are satisfied that Colket and Woodside agreed jointly to raise the $25,000 for the Mohave company, and that the notes presented to the auditing judge and those of which they were the last renewals were given with the understanding and agreement that the parties assumed a joint liability thereon. It follows that the claim presented by Woodside for contribution by

Colket's estate should have been allowed by the auditing judge.

The decree of the court below is reversed with instructions to allow the Woodside claim.