## Waber's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen and Sinkler, JJ.

*Harry Shapiro*, for exceptant.

*Morris Wolf* and *Shields, Clark, Brown & McCown*, contra.

HENDERSON, J., April 6, 1934.—The auditing judge allowed the claim of Integrity Trust Company in the sum of $22,900, with interest, arising upon two joint and several demand notes, each signed and endorsed by the decedent and Max and Louis Waber. To this action exceptions were filed.

The exceptions raise certain questions of fact and law. As to the former, the

findings have the weight of the verdict of a jury and will not be disturbed except for manifest error, which has not been shown in the instant case.

In Schmitt's Estate, 21 Dist. R. 353, 354, we said:

"Findings of fact by an auditing judge, like the verdict of a jury, will not be disturbed unless clear error be shown (Kelly's Estate, 12 Dist. R. 718), and if there be sufficient evidence such findings will stand, even though another judge might have reached another and a different conclusion: Royer's Estate, 217 Pa. 626. To justify a reversal there must be manifest error (Boyd's Estate, 17 Dist. R. 393; Pollard's Estate, 18 Dist. R. 636), or the inferences and conclusions unwarranted: Cake's Appeal, 110 Pa. 65."

Upon questions of law, the estate contends the written agreements were of guaranty and not of suretyship. The notes themselves afford no ground for the argument, because the three who signed them made themselves primarily liable. But it is contended that the notes were given in pursuance of an application to Integrity Trust Company for a builder's contract, which contained the following statements:

"Max Waber is the builder and owner.

"David and Louis Waber are guarantors only."

It should be noted that the decedent was not a party to this application. Even though it is contended that in some way he is affected by these statements, the answer is that under the Act of July 24, 1913, P. L. 971, sec. 1, he is liable as a surety unless he has complied with the act, which provides:

"Every written agreement hereafter made by one person to answer for the default of another shall subject such person to the liabilities of suretyship, and shall confer upon him the rights incident thereto, unless such agreement shall contain in substance the words: 'This is not intended to be a contract of suretyship,' or unless each portion of such agreement intended to modify the rights and liabilities of suretyship shall contain in substance the words: 'This portion of the agreement is not intended to impose the liability of suretyship.' "

The use of the word "only" is not a compliance with the terms of the act. In Brock's Assigned Estate (No. 1), 312 Pa. 7, 18, Mr. Justice Maxey said:

"The written agreement before us omits mention of any *non*-intention 'to impose the liability of suretyship.' If the obligors had sought to avoid the liabilities of suretyship, they should have done so in language conformable to the prescriptions of the act."

We are of opinion that, as the decedent was a stranger to the written agreement, it cannot limit his liability; and even under it the language, under the Act of 1913, is not sufficient to confine the instrument to the liability of a guarantor.

The estate also contends there was an oral release—but this is a question of fact, and it has not been shown that the auditing judge has abused his discretion.

The attempt to convert by parol the contract of suretyship to one of guaranty cannot be done in the absence of fraud, or mistake.

It is contended that clause 8 of the agreements, and at the argument it was further urged that clause 26, only empowered the claimant to collect and apply rents to superior lien holders. The auditing judge has shown that there is nothing in this argument so far as clause 8 is concerned, and we concur in his opinion.

Clause 26 merely provides: "This agreement is made for the benefit, first, of the party of the second part; second, for the party of the first part and not for the benefit of any contractors, subcontractors, materialmen, employes of the party of the first part or other whosoever."

The claimant collected certain rents, and upon vouchers signed by Max Waber

paid subcontractors, which was clearly in "reduction of all money due on the operation." These were "debts contracted for, in, and about the erection and construction of said buildings", to use the language of clause 8, and the provisions of clause 26 in no wise change or modify it.

It is further contended that the claimant promised to procure a "permanent mortgage" for $180,000 (on the two properties) and, as it failed to do so, it was guilty of a breach of contract and cannot recover. There is no evidence of such a promise from anyone empowered by the corporation claimant to make such. The statement contained in the second application for a loan:

"Metropolitan Life Insurance Company will send a commitment for a $90,000 or $95,000 mortgage"; is merely a self-serving declaration and is not evidence of any such promise by the claimant.

In the absence of fraud, accident, or mistake, the auditing judge was clearly right in refusing to allow Max Waber to testify to the relation of the decedent to the transaction and the nature of his obligation on the notes.

The exceptions are dismissed, and the adjudication is confirmed absolutely.