## Singerly *versus* Swain's Administrators.

In an action against the purchaser at an Orphans' Court sale, of a decedent's real estate, made by the administrators for payment of debts, for the difference between the amount of his bid, and what it brought at a resale, rendered necessary by his default, the defendant cannot set off a debt due to him by the decedent.

The regularity of the proceedings in the Orphans' Court cannot be inquired into, in such collateral action.

Where the purchaser at an Orphans' Court sale makes default, he is not discharged from liability, by an alteration of the terms of sale, prescribed by the court, in order to hold the purchaser on a resale.

It is the duty of the court to prescribe the terms of sale, and they may alter them, in their discretion, when rendered necessary by the circumstances of the case, without discharging the liability of a defaulting bidder at a former sale.

A lien-creditor, who purchases at an Orphans' Court sale, can only entitle himself to retain a portion of the purchase-money, by the mode prescribed by the Act 2d April 1846.

ERROR to the District Court of *Philadelphia*.

This was an action of *assumpsit* by Alexander Whilldin and Benjamin Swain, administrators of T. W. Swain, deceased, against Joseph Singerly, for the difference between his bid for a portion of the decedent's real estate, at an Orphans' Court sale, and what it brought on a resale, rendered necessary by his default.

On the 20th June 1856, the plaintiffs, under an order of the Orphans' Court, exposed the real estate of the intestate to public sale, for the payment of debts; when Joseph Singerly, the defendant, became the purchaser of a house and lot at Broad and Thompson streets, in the city of Philadelphia, at the price of $6900; and paid down $50, as prescribed by the conditions of sale.

This sale was duly confirmed, the plaintiffs tendered to the defendant a deed for the premises, and demanded payment of the balance of the purchase-money. The defendant, however, refused to comply with the conditions of sale, claiming the right to deduct from the purchase-money a mechanic's lien for $4077.50, which he held against the premises; but which was disputed, and in litigation. The plaintiffs declined to allow this claim, and applied to the court for an *alias* order of sale, which was granted.

On the 6th January 1857, the premises were again offered for sale, upon the same terms and conditions, at the risk of the former purchaser, and purchased by Singerly for $6000; who paid $50 on account, but again refused to comply with the conditions of sale, claiming as before, to retain the amount of his lien out of the purchase-money.

On the 3d April 1857, the Orphans' Court, on application of the plaintiffs, with notice to the defendant, awarded a *pluries*

[Singerly v. Swain's Administrators.]

order of sale; and directed that the purchaser should be required to pay $1000 of the purchase-money, at the time of sale; under this order, the premises were again exposed to sale, and purchased by L. M. Whilldin, for $3100; and this suit was brought against Singerly, for the difference between the price at which the premises were struck off to him at the first sale, and that which they eventually realized, with interest.

The defendant pleaded *non assumpsit*, payment, and set-off, with leave, &c.; but no notice of set-off was given, as required by the rule of the District Court.

On the trial, the defendant offered to file a special plea of set-off, which the court below refused to allow; and the defendant excepted. He then offered in evidence a mechanic's lien against. the premises for $4077.50, and to prove that the intestate was indebted to him in that amount for building the house in question; but the court refused to admit the evidence, and sealed another bill of exceptions.

The defendant then presented the following points in writing, upon which he requested the court to charge the jury:—

1. That the sale of June 20th 1856, having been confirmed, and so remaining unamended on the docket, made absolute defendant's contract; which was discharged, and defendant released by sale of January 6th 1857, without amendment of former return.

2. That the second sale of May 5th 1857, discharged defendant from his contract, the return not having been amended, but showing a sale made and confirmed.

3. That plaintiffs, by having the sales of June 20th 1856, and January 6th 1857, *set aside* instead of amending return, discharged defendant from liability; it appearing by the record as it now stands that no sale was made.

4. That plaintiffs, by changing the terms of sale on the last sale, have released defendant from his contract, and thus discharged his liability.

5. That, without the first sales of June 1856, or January 1857, being set aside, or confirmation amended or annulled, no title passed at the last sale.

6. That a prior order of sale must be first disposed of before a second one can issue; that is, there must be a return, upon a return and confirmation, there is an inchoate title in the purchaser, which must be disposed of, by amendment of return, or annulling of confirmation, before a new order of sale can issue.

The court below declined so to charge, but reserved the question of law for the court in *banc*, and directed the jury to find for the plaintiffs, subject to the opinion of the court on the point reserved. The jury, accordingly, found a verdict for the plaintiffs for $4224; and the court below, subsequently, entered judgment

[Singerly *v.* Swain's Administrators.]

for the plaintiffs on the reserved point; when the following opinion was delivered by HARE, J.:—

" The question whether the conditions of a second sale, which has been rendered necessary by the failure of the purchaser to comply with the terms of the first, can be varied by the court without discharging him from the obligation into which he has entered, and thus extinguishing the liability incurred by its non-fulfilment, is one of constant occurrence in practice, but has never received a final or authoritative solution. The cases of Paul *v.* Shallcross, 2 *Rawle* 362, and Banes *v.* Gordon, 9 *Barr* 426, which have been cited on the part of the defendant, do not touch the point now before us; Banes *v.* Gordon, simply deciding that a purchaser at a sale made by executors under an order of court, will be discharged, if the terms of the second sale are varied by the executors of their own motion, without the sanction of the court; while Paul *v.* Shallcross is still more remote, and merely determines that a new agreement between the executors and the purchaser may supersede the old, or extinguish the obligations. The change made in the terms of the sale in the present instance, was made by order of the Orphans' Court, and after due notice, and is consequently binding on the purchaser, unless the court has exceeded their powers in making it. The point is not free from difficulty; but we are, on the whole, of opinion, that whenever a sale falls through, from the default of the buyer, and there is sufficient ground for believing that the purchase was made without any intention to pay for it, in pursuance of a preconcerted scheme to defeat the ends of justice, and prevent or delay the completion of the sale, there must be a power somewhere to prevent a repetition of the same course, by making the terms of the second sale cash, even when those of the first have been credit, and requiring the whole or part of the price to be paid down at the time of the bid, without releasing the guilty party from the liability which is the only penalty for his misconduct. Any other conclusion would involve a dilemma, which obviously ought not to exist, and would compel the parties to choose between a release of the purchaser and an indefinite protraction of the sale. The rule for a new trial is consequently discharged, and judgment entered for the plaintiffs on the point reserved."

To this opinion the defendant excepted, and having removed the cause to this court, assigned for error: 1. The rejection of his plea and evidence of set-off. 2. The entry of judgment for the plaintiffs on the reserved point.

*Juvenal,* for the plaintiff in error, cited Mode's Appeal, 6 *W. & S.* 280; Paul *v.* Shallcross, 2 *Rawle* 326; Randolph's Appeal, 5 *Barr* 245; Banes *v.* Gordon, 9 *Id.* 427; Wood *v.* Levis, 2 *Harris* 13.

[Singerly v. Swain's Administrators.]

*S. H. Perkins*, for the defendants in error.

The opinion of the court was delivered by

WOODWARD, J.—Nothing is more clear than that the defendant's set off was properly rejected. For what was it? The defendant, called on to answer for the difference between the sum at which he bid off, at Orphans' Court sale, part of the real estate of the decedent, and the sum at which it sold on a resale, made necessary by his refusal to comply with his bid, offered, in defence of himself, to show the decedent's indebtedness to him.

It would seem, that the rule of the District Court in relation to notice of set-offs had not been complied with by the defendant; but his offer was not evidence on general principles.

The estate of Swain, said to be largely insolvent, was in process of administration, for distribution among creditors according to law. The Orphans' Court sale was a necessary step in this process. The defendant, by bidding off the property in question, entered into a contract with the executors, as such, on which he is now called to answer. If he may set off the indebtedness of the decedent, and thus release himself from the consequences of his contract, he not only obtains an advantage over other creditors of the estate, but he makes it impossible for the executors to distribute the estate according to law.

Besides, the debts are not in the same right. One of them never existed between the defendant and the decedent, and the other existed between them only. The principle has been twice ruled, 10 *S. & R.* 10, 2 *Jones* 64; and was applied to parties in a fiduciary relation of a different character, in 2 *Harris* 162.

The regularity of the proceedings in the Orphans' Court is not to be inquired into in this collateral action. Having acquiesced in them without appeal, the only question which the defendant has raised upon this record, to be noticed by us, is the legal effect of the alterations of the terms of sale.

We have lately had occasion to consider the nature of Orphans' Court sales of real estate, with especial reference to the power and duty of the Court to prescribe terms of sale. We hold, that the terms of sale are part of the judicial decree, and are to be made by the court, and not by the executors or administrators; and, like any other decree, may be amended or modified by the court, at any time before the record is made up and closed.

When Mr. Singerly twice purchased this property and refused to comply, he was bound to take notice that the Orphans' Court had power to alter the terms of the next sale. He ran the risk of a change of terms that would depress the price. He has no reason, therefore, to complain now that such change was made. His capricious conduct could not impair the powers of the court.

[Singerly *v.* Swain's Administrators.]

Because they had, again and again, ordered a sale with only $50 paid down—and had ascertained, that on such terms the purchaser could not be held, were they to be denied the right to make a sale on terms that *would* hold the purchaser? To deny the legal effects of such a sale, is to deny the right to make it. The Act of Assembly requires the sale to be made under the "direction" of the court, and in a collateral proceeding they are always to be considered to have exercised a sound discretion. We hold, therefore, that they had a right to alter the terms of sale, and that such alteration discharged no liability which the defendant had incurred by reason of his non-compliance with the former sale.

But he complains that he was a lien-creditor to nearly the amount of his bid, and that he offered to pay the difference to the executors. If he was a lien-creditor, he was within the 1st and 2d sections of the Act of 20th April 1846, relating to executions, *Purd.* 343, and should have pursued the directions therein contained. He should have tendered to the executors a certified copy of his lien, and his receipt for the amount thereof, and then, on payment of the difference between that and his bid, he would have been in a condition to assert his rights and prevent a resale.

But this part of his duty he appears to have neglected, and has thrown himself on the forlorn hope of disputing the Orphans' Court's right to vary the terms of sale.

The cases cited to sustain him do not apply, and the judgment must be affirmed.

Judgment affirmed.