# Pepper *v.* Deakyne (No. 1).

*Sheriff's sale—Resale—Defaulting bidder—Measure of damages—Damages.*

A defaulting bidder is liable for a loss occasioned by his failure to comply with the terms of a sheriff's sale, and the measure of damages is the difference of price on a resale fairly conducted upon terms not less advantageous to the purchaser than the first.

A defaulting purchaser at a sheriff's sale is not liable to respond in damages for loss on resale of the property if it appears that under the first sale he would have acquired a more valuable title than that which passed to the purchaser at the last sale, or that the terms of the first sale were more advantageous to the purchaser than those of the resale; and it is immaterial whether a change in the terms is by act of the sheriff, the plaintiff, or the court.  Singerly v. Swain's Admrs., 33 Pa. 102, distinguished.

Such cases belong to the class in which the certainty of the legal rule fixing the rights of parties is more important than the theoretical perfection of the rule itself.

Argued Jan. 20, 1905.  Appeal, No. 147, Jan. T., 1904, by Robert G. McDougal, from order of C. P. No. 1, Phila. Co., Dec. T., 1901, No. 2187, dismissing exceptions to auditor's

report in case of Joseph W. Pepper, successor of John W. Pepper and H. H. Pigott, guardian of the estate of minor children of J. Howard Gibson, deceased, v. William F. Deakyne, mortgagor, and the Arlington Hotel and Improvement Company, real owner. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Exceptions to report of Henry B. Patton, Esq., auditor.

The auditor reported the facts substantially as follows :

On March 26, 1901, the property known as the Childs' Mansion, standing at the southeast corner of Twenty-second and Walnut streets, Philadelphia, was transferred by William F. Deakyne to the Arlington Hotel Company.

Deakyne had previously, in February and in August, 1900, placed two mortgages upon the property.

The first of those mortgages, hereinafter known as the Pepper mortgage, was conditioned upon the payment of $65,000, and the second, hereinafter known as the Bond mortgage, upon the payment of $6,000.

These mortgages were subsequently reduced to judgment, the Pepper mortgage as of December Term, 1901, C. P. No. 1, No. 2187, and the Bond mortgage as of June Term, 1901, C. P. No. 1, No. 4100.

Upon the Pepper judgment a writ of levari facias issued on February 5, 1902, returnable to the first Monday of March, 1902; this writ was stayed.

On March 13, 1902, a writ of alias levari facias issued, returnable the first Monday of April, 1902.

At the sale, the property was bid in by George Gluyas Mercer, attorney, for $110,500 and $50.00 paid down, but the terms of sale were not complied with.

Thereafter, in answer to the petition of the plaintiff, the court, on May, 5, 1902, made an order increasing the deposit, or down money, to be required by the sheriff from any purchaser at the sale, to $1,000.

On May 7, 1902, a writ of pluries levari facias issued, returnable to the first Monday of June, 1902; this writ was stayed.

On June 12, 1902, a second pluries levari facias issued, returnable to the first Monday of July, 1902.

At the sale, the property was bid in by W. S. Divine, attorney for Wm. F. Deakyne, for $84,000, and $1,000 was paid down, but the terms of the sale were not complied with.

Thereafter, upon petition of the plaintiff, the court, on August 9, 1902, increased the down money to $2,000.

A third pluries levari facias then issued, returnable to the first Monday of September, 1902.

At the sale, the property was bid in by John Sparhawk, Jr., attorney for Robert McDougal, for the sum of $83,050, and $2,000 was paid down, but the terms of the sale were not complied with.

On November 6, 1902, the court, upon petition as before, increased the down money to $5,000. Subsequently, writs of fourth and fifth levari facias issued, returnable respectively to the first Monday of December, 1902, and March, 1903, but both of these writs were stayed, and no further steps have been taken under the judgment. Thus the sum of $3,050, forfeited deposits, was left in the sheriff's hands.

On April 6, 1903, the property was sold by the sheriff, under a writ of pluries levari facias issued upon the Bond judgment. The purchaser was John Sparhawk, Jr., attorney for Robert G. McDougal, and the purchase price was $10,550, subject to the Pepper mortgage.

Not until the morning of the sale, to wit: the morning of April 6, 1903, was the down money of $5,000, directed by the court to be paid, reduced to the sum of $3,000.

Christine Bond, the plaintiff in the above-named cause, having notified the sheriff to pay the proceeds of the sale into court, the city of Philadelphia, on June 15, 1903, filed its petition for a rule upon the sheriff and the various parties in interest to show cause why the sheriff should not pay the $3,050, forfeited deposits in the Pepper case, into court. This petition was based on the allegations that the petitioner was entitled to receive taxes from the property in question to the amount of over $5,000, that the sum of $10,500, proceeds of the sale under the Bond writ, was not sufficient to pay the aggregate of taxes in full, and also to pay the amount of the Bond judgment; that Christine Bond, the plaintiff in that

judgment, intended to resist the payment in full to the petitioner of the claim for taxes out of the said fund, on the ground that the $3,050, realized by the sheriff's sales under the Pepper writs, should first be appropriated to the petitioner's claim before it should be allowed to come in upon the fund realized by the Bond sale; that if the petitioner did take its satisfaction out of the fund realized by the Bond sale, the said Christine Bond would be entitled to subrogation to the rights of the petitioner in regard to the fund realized by the Pepper sale, and that the Pepper mortgage had been assigned to Ivins, Dietz & Metzger Company, who did not intend to offer the property at present for sale again thereunder.

To this petition an answer was filed by William F. Deakyne, one of the defaulting purchasers, and mortgagor, denying that the city of Philadelphia had any claim whatever upon the fund realized by the sales under the Pepper writ, and alleging that the $1,000 paid to the sheriff by the respondent was not forfeited, but should be repaid to him by the sheriff, ending with the prayer that the petition be dismissed.

An answer was also filed by Christine Bond, confirming the averments contained in the petitions, and joining in the prayer of the same.

The matter was subsequently heard by the court, and thereafter the court granted the prayer of the petitioner, and made an order requiring the sheriff to pay the $3,050 into court.

The auditor awarded the fund to the city of Philadelphia on account of its claim for taxes and water rent.

Exceptions to the auditor's report were dismissed by the court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Charles H. Edmunds,* for appellant.—The change in the conditions of the sale did release the purchaser at sheriff's sale: Smith v. Wilson, 152 Pa. 552; Hare v. Bedell, 98 Pa. 485; Ramsay v. Hersker, 153 Pa. 480; Weast v. Derrick, 100 Pa. 509; Freeman v. Husband, 77 Pa. 389.

*E. Spencer Miller*, with him *William H. Wilson*, assistant city solicitor, and *John L. Kinsey*, city solicitor, for appellee.— The case is ruled by Tindle's App., 77 Pa. 201.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 22, 1905 :

Passing by some preliminary questions as to the authority of the court to appoint the auditor, and the jurisdiction of the latter to distribute a fund paid on a previous sale, on a different writ and apparently to a different sheriff, the substantial question is whether there was such a variation in the terms of sale, to the disadvantage of appellant, a defaulting purchaser, as released his hand money already paid to the sheriff and discharged him from further liability on his bid.

A defaulting bidder is liable for the loss occasioned by his failure to comply with the terms of the sale, and it is equally well settled that the measure of damages is the difference of price on a resale fairly conducted upon terms not less advantageous to the purchaser than the first : Bowser v. Cessna, 62 Pa. 148. That was not the case of a sheriff's sale, but the same rule applies as will appear later on.

The point has been frequently before this court, and the law laid down without substantial variation. It is fully and accurately stated by the late Chief Justice STERRETT in Hare v. Bedell, 98 Pa. 485, as follows : "It is very clear that a defaulting purchaser at sheriff's sale is not liable to respond in damages for loss on resale of the property, if it appears that under the first sale he would have acquired a more valuable title than that which passed to the purchaser at the last sale, or that the terms of the first sale were more advantageous to the purchaser than those of the resale. The obvious reason of this is, that the inferior quality of title or the less advantageous terms of sale, would naturally effect a reduction of price, and we would be left without any reliable standard by which to measure the loss sustained by the refusal of the purchaser at the first sale to make good his bid."

The same rule was expressed previously in Freeman v. Husband, 77 Pa. 389, where it was said : " If the terms were materially altered upon the resale he (the purchaser) was thereby released ; for he cannot be held to conditions that did not form part of his contract."

In the last case the change in the terms of sale was made by the sheriff on his own motion or at the instance of the plaintiff, and it is argued that a change by order of the court should stand on a different footing. But on the reason of the rule as declared in the opinions above cited, that the release of the purchaser is because of the change of the conditions of his contract, it can make no logical difference whether the change was by act of the sheriff, the plaintiff or the court. The more onerous conditions tend to lessen the price likely to be bid at the second sale, and thereby render inapplicable the settled measure of damages. And it is expressly so held in Weast v. Derrick, 100 Pa. 509, where it is said : " Sales, public or private, are precisely what the contract of the parties make them, and a sale in pursuance of an order of the court is governed by the prescribed terms, the same as the accepted terms of a sale made without judicial order. When the resale is for a less price, upon other terms than the first, the vendor cannot compel the first purchaser to make good the loss. The basis is shifted. To refer such a case to the jury, would introduce an uncertain measure of damages, whereas the only measure is the difference between the price of the first and second sale. . . . The fact that the court prescribed the terms of the second has no bearing upon the question at issue. Those terms were made upon the plaintiff's motion, but no matter how made, it is essential to his case that the second sale was not loaded with heavier terms than the first."

This rule has been followed in Ramsay v. Hersker, 153 Pa. 480, and Connell v. Shryock, 167 Pa. 483, and must be accepted as the settled law.

The only case in conflict with this principle is Singerly v. Swain's Admrs., 33 Pa. 102. That was a sale under order of the orphans' court, and the change in the terms was made by the court after two defaults by the same purchaser, the plaintiff in error. The court, after referring to its recent consideration of the nature of orphans' court sales with reference to the power and duty to prescribe terms, said: " When Mr. Singerly twice purchased this property and refused to comply, he was bound to take notice that the orphans' court had power to alter the terms of the next sale. He ran the risk of a change of terms that would depress the price." Sales under orders of

the orphans' court differ materially from other judicial sales in that they are subject not merely to the legal jurisdiction of the court but also to its discretionary approval, and are not complete until confirmation.  Whether this is a sufficient foundation for a different rule as to the responsibility of a purchaser may be left to decision when the question shall arise directly.  But as to ordinary sheriff's or other sales it is clear that they belong to the class of legal problems in which to have a fixed rule by which all parties may clearly and readily know their rights and responsibilities, is more important than the theoretical perfection of the rule itself.

On the conceded facts the appellant was entitled to the return of his deposit money, less the proper charges and expenses of the sale in which such deposit was made.

Decree reversed at the costs of the appellee.