## Clever, Appellant, *v.* Clever.

*Vendor and vendee—Contract—Written memorandum—Conflicting evidence—Statute of frauds.*

1. Where in an action to recover back money paid under an agreement to purchase real estate, the plaintiff alleges a purely oral agreement, while the defendant alleges that the terms of the agreement were set forth in a written memorandum signed by himself, but not by plaintiff, and the terms of the two agreements are different, it is for the jury to determine from the conflicting testimony what in fact was the agreement between the parties.

2. In such a case even if the written memorandum is shown by overwhelming evidence to have been dictated by the plaintiff, and the various terms thereof suggested by himself, this will not shift the function of determining the disputed facts from the jury to the presiding judge.

3. It does not follow that because, in a proceeding for specific performance, the production of a memoradum in writing, signed by the vendor alone, meets the requirements of the statute, the mouth of the vendee is closed from asserting that the contract evidenced by the writing is not his contract, that he never assented to it or adopted it and that it was nothing but the self-serving declaration of the party whose act alone it, on its face, purported to be.

*Vendor and vendee—Resale—Measure of damages.*

4. The measure of damages, where there has been a resale, is the difference between the price agreed to be paid by the vendee and that obtained on a resale. It is predicated of course on the undisputed facts in the case that the resale was a public one, fairly conducted, after full notice to the public and the vendee, upon the same or as advantageous terms as the first.

Argued March 9, 1908. Appeal, No. 13, March T., 1908, by plaintiff, from judgment of C. P. Cumberland Co., May T., 1907, No. 441, on verdict for defendant in case of Joseph Clever *v.* Conrad Clever. Before RICE, P. J. PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Foreign attachment in assumpsit. Before SADLER, P. J.

The court charged in part as follows:

The plaintiff in this case has brought the present action to recover from the defendant the sum of $150 paid him on Octo-

ber 15, 1904, on a contract which he, the defendant, Conrad Clever, made on that day to sell him a farm in Southampton township, Cumberland county.

The agreement of sale so signed by the defendant, a copy of which has been offered in evidence, is as follows:

"SHIPPENSBURG, PA., Oct. 15, 1904.

"I have this day sold to Joseph Clever my Farm situated Cleversburg containing 100 acres more or less for Forty two dollars and fifty cts per Acre on the following terms I am to releas to the said Joseph Clever the lease now held by Russell & Hykes on a sertan no of acres now in peaches $\frac{1}{2}$ of grain in ground to be delivered in the bushel. No straw or Fodder to be removed off said farm. No timber to be cut on said farm. Buildings to be left in a reasonabl condition. Insurans Policies to be transferred and all taxes to be Paid in full for 1904. One hundred and fifty cash. Five hundred or as much as can be raised on the first of April, 1905. Bal to be secured by mortgage at at 4%.

"Witn my hand,
        "CONRAD CLEVER."

The plaintiff contends, and has testified that it was agreed, and that the defendant stipulated, and that it was a condition of the purchase by the plaintiff, Joseph Clever, that a certain lease which had been made of a portion of the farm for a peach orchard to Russell & Hykes Brothers should be released, as stated in the article, but that not only was Conrad Clever to secure the release thereof, but that he was to accomplish this by the middle of the following week, and that he was also to notify him, Joseph Clever, that he had so secured the same; the latter desiring to take possession of this portion of the land, and remove the trees growing thereon; that he desired this, because his object in buying the property was to put his son on the farm, who had been employed in Pittsburg, and was there on a visit to his father; that no notice had been given to him that the release of the same had been secured up until Friday, October 21, that he then went to Shippensburg and notified S. K. Clever, the brother of the defendant, that he would not take

the property, giving as a reason that no notice had been given him that a surrender of the lease has been secured from the said lessors. Some correspondence passed between the parties addressed by Conrad Clever to Joseph Clever, and by Joseph to Conrad, and one addressed by Conrad Clever to Joseph Clever, on the        day of        , 1904, was offered in evidence on his behalf. Joseph also states that no hay was to be taken from the farm which had been raised upon it, as well as no straw or fodder; that no timber was to be cut or carried away, or anything removed except what belonged to the tenant, and he called witnesses to show that three loads of hay had been removed, about three tons each, of the value of, as given by one witness, as we remember, $12.00 or $13.00 per ton.

On the other hand, the defendant came upon the stand and testified that no agreement as to the procuring of the surrender of the lease was made, except what appears in the agreement; that he did not agree to procure its surrender by the middle of the following week, and did not agree to notify him, Joseph Clever, of its surrender within that time.

D. B. Russell, who prepared the agreement, also contradicts the plaintiff in this matter; he says that no time was fixed for its surrender to Clever, stating that he wanted it as soon as it could be secured. He also states that on that day he assured Joseph Clever that it would be surrendered, and that on that very night he and the Hykes met and agreed to surrender the lease, but that the paper formally surrendering the same was not executed until the        day of January following. Mr. Russell also says that nothing was said about hay—that Joseph Clever was to have all except what belonged to the tenant.

D. A. Smith was also called and states that he was present when the contract of October 15 was made and written, and he stated how the parties stood about the wagon on which it was written; that he heard all that was said by the parties, and he testified also that there was no agreement that a surrender of the lease was to be secured by the middle of the week, or at any definitely fixed time, or that notice of the surrender was to be given by Conrad Clever to Joseph Clever within that time, nor was any such promise made by Conrad Clever. He states that

nothing was said about hay—all stuff on farm to go to Joseph Clever, except tenant's property.

[All three of these witnesses state that after the agreement was signed, Joseph Clever stated to Conrad that if he did not secure the surrender of the lease, he would only pay $40.00 per acre instead of $42.50, and that to this Conrad made no reply. These statements, if made, were inconsistent with the present contention of the plaintiff, and were not denied by him, as we recollect the testimony.] [16]

S. K. Clever also testifies that on Tuesday, October 18, Joseph Clever called on him at Shippensburg, and told him that he would not take the farm, and that if he had to lose the $150 paid he would do so, or words to that effect, and that he did not then state that he was refusing to carry out his contract because of the failure of Conrad Clever to secure a surrender of the lease. He also states that the hay was removed by him; that it belonged to him.

Mr. Baker testifies that on Sunday the 16th and Monday the 17th, Joseph Clever spoke to him about leasing the farm to him; that he refused to take a lease of the same, and that on Tuesday evening the 18th, he told him he had concluded not to take the farm, and had thrown it up, or words of similar import.

The defendant also offered the contract of October 15 to show that while it provides for a surrender of the lease, no time is fixed within which it should be done, except the implication that it would be required before April, when the deed was to be made.

The letters of Joseph Clever were offered to show that in none of them does he assign as a reason for his refusal to carry out the contract that the lease had not been surrendered by the middle of the week following the sale of October 15, or that he had not received notice of the same—certainly not explicitly. But that he denied in these letters that he had ever made a contract. This was offered as tending to show that his present claim has been an afterthought.

In this connection it may be but proper to state that Joseph Clever was called in rebuttal and denied that he saw Samuel Clever on October 18, insisting that it was on the 21st, and that

it was on that day that he saw Baker, and told him that he had concluded not to take the farm, and his son was called who stated that he was husking corn that week with his father, and that he did not go to Shippensburg until Friday the 21st.

The defendant also offered testimony showing that a deed was prepared and tendered to Joseph Clever, by letter of Mr. Johnston, dated March 27, and in person on April 1, which was refused.

[It was further shown that Mr. Clever subsequently advertised the farm at public sale, and resold the same upon practically similar conditions as to payments;] [17] that he realized but $3,825.84 therefor, thus losing the sum of $135.11 on the sale, besides interest on the money which Joseph Clever had agreed to pay from April 1, which would amount to $19.00 additional; that the costs of the second sale were $8.00 and that he paid his attorneys $30.00. He thus contends that instead of being a debtor to the plaintiff, he has lost through the default of the latter not only the $150 paid to him on October 15, but that he has in addition lost the sum of $192.91; and this he insists that the plaintiff is bound to refund him, and he asks that instead of finding a verdict in favor of the plaintiff, you should, and are required, under the evidence, to find a verdict in his favor and against the plaintiff for this loss above $150. As already stated in answer to the points presented, we do not think that under the testimony you can consider the fees paid the attorneys, and the $30.00 paid them should be eliminated, as well as the costs of the second sale, $8.00. [So that the amount that we think proper for you to take into consideration is $154.91, to wit: the loss of the $135.11, the difference in the price of the sale, and interest from April 1, to the time of the second sale at four per cent. We think, as a matter of law, that that is the damage suffered by the defendant in this case, and the damage which we think you can take into consideration in coming to a determination.] [18]

[We are satisfied that as no fraud, accident or mistake was alleged or shown in the making of the written contract, that it is incompetent under the law for the plaintiff, Joseph Clever, to contradict its terms, or to materially modify the contract by

fixing the surrender of the lease of the peach orchard at a particular date, and making that of the essence of the contract. Surely is this so when the written paper is testified by three witnesses to set forth what was agreed as to the lease, and three of whom expressly contradict the plaintiff in this matter.] [19]

[It not being controverted that the plaintiff paid $150 to the defendant on October 15, 1904, what will, therefore, be for your consideration is to determine whether Conrad Clever suffered any loss or damage by reason of the default of Joseph Clever to take the farm and comply with the conditions, and if so, how much;] [20] and also whether under the evidence that you have heard in this case, and the law as given you by the court, the defendant is entitled to set off the loss or damages against the claim for the return of the $150, and should you find his loss exceeded that sum, determine how much, and in that case, as the defendant insists, you may find a verdict in favor of the defendant for such sum.

[The law is that when one enters into a contract for the purchase of a property, and refuses to comply with the conditions, there may be collected from him the loss which the owner of the property suffers by such default, and that this loss or damage may be ascertained by a public resale of the property, on the same conditions as to the payments, and if a partial payment or partial payments have been made, they may be retained to an amount sufficient to pay the owner for the loss, and should these partial payments not be sufficient to reinburse him for the loss, he may sue and recover the excess in an action at law.] [21]

[The terms must be reasonably as advantageous at the second sale as at the first—there must be reasonable care exercised, and they must be substantially and practically the same.] [22]

Verdict and judgment for defendant for $4.06. Plaintiff appealed.

*Errors assigned* amongst others were (16–22) above instructions, quoting them.

*F. B. Sellers, Jr.,* and *E. M. Biddle, Jr.,* for appellant.—The memorandum was not the contract between the parties: Ander-

son v. National Surety Co., 196 Pa. 288; Harper v. Kean, 11 S. & R. 280; Schwab v. Ginkinger, 181 Pa. 8; Balto. & Phila. Steamboat Co. v. Brown, 54 Pa. 77; Selig v. Rehfuss, 195 Pa. 200; Wetherill Bros. v. Erwin & Wagener Co., 12 Pa. Superior Ct. 259; Holt v. Pie, 120 Pa. 425; Miller v. Fichthorn, 31 Pa. 252; Mellon v. Davison, 123 Pa. 298; Conrade v. O'Brien, 1 Pa. Superior Ct. 104; Sands, Herdic & Co. v. Arthur, 84 Pa. 479.

A defaulting purchaser at a sale is not liable to respond in damages for loss on resale of the property, if it appears that the terms of the first sale were more advantageous to the purchaser than those of the resale: Hare v. Bedell, 98 Pa. 485; Weast v. Derrick, 100 Pa. 509; Ramsay v. Hersker, 153 Pa. 480; Pepper v. Deakyne, 212 Pa. 181; Freeman v. Husband, 77 Pa. 389; Paul v. Shallcross, 2 Rawle, 326.

*S. B. Sadler*, with him *W. R. Johnston*, for appellee.—The memorandum of sale signed by the grantor, and accepted by the vendee by the payment of the purchase price therein provided, constituted the agreement of the parties: Witman v. Reading, 191 Pa. 134; Pittsburg Mfg. Co. v. Fidelity Title & Trust Co., 207 Pa. 223; Brodhead v. Reinbold, 200 Pa. 618; Hughes v. Antill, 23 Pa. Superior Ct. 290; Lowry v. Mehaffy, 10 Watts, 387; Tripp v. Bishop, 56 Pa. 424; Johnston v. Cowan, 59 Pa. 275; McFarson's Appeal, 11 Pa. 503; Smith's Appeal, 69 Pa. 474.

The deficiencies in a written agreement which may be supplied by parol evidence are not such as contradict or vary the express terms of the writing. The latter can be shown only under an offer to prove fraud or mistake at the time of the execution of the writing: Coughenour v. Suhre, 71 Pa. 462; Railroad v. Swank, 105 Pa. 555; Streator v. Paxton, 201 Pa. 135; Dickson v. Hartman Mfg. Co., 179 Pa. 343; Shepler v. Scott, 85 Pa. 329.

The general rule as to the measure of damages in such case rests on compensation such as will restore the parties to the same condition as before the contract was made: Hertzog v. Hertzog's Administrator, 34 Pa. 418; Bowser v. Cessna, 62 Pa.

148; Poulson v. Ellis, 60 Pa. 134; Schmidt v. Ramsay, 6 Pa. Dist. Rep. 584; Girard v. Taggart, 5 S. & R. 19; Tompkins v. Haas, 2 Pa. 74; Coffman v. Hampton, 2 W. & S. 377; Hughes v. Miller, 186 Pa. 375.

OPINION BY HEAD, J., February 26, 1909:

The fundamental error, into which the learned trial judge fell, was in disposing of the case as if the agreement, out of which the contention of the parties arose, had been reduced to writing and duly executed by both of them. No such paper appeared either in the pleadings or the evidence. The plaintiff declared that, by an oral agreement, he had undertaken to buy, from the defendant, a tract of land owned by the latter on certain terms and conditions assented to by both, and in pursuance of that agreement had paid $150 on account of the purchase money. He averred that by reason of the failure of the defendant to comply with the terms and conditions agreed upon, he had rescinded the contract, and was entitled to the return of the money he had paid. The defendant, in his affidavit of defense, admits that an agreement had been made "but denies that the same was an oral contract as alleged by the plaintiff and alleges that the said contract was wholly in writing." He then makes profert of what he alleges to be a copy of the written agreement. This, upon its face, however, purports to be nothing more than an ex parte memorandum of the defendant, signed only by him, reciting the fact that he had made a sale—"I have sold this day to Joseph Clever my farm," etc.—and reciting in turn certain terms and conditions, differing in some particulars from those averred by the plaintiff. Thus at the very threshold of the case the parties were at issue on the important question of fact whether the agreement, into which each admitted he had entered, had been reduced to a written instrument expressing the terms to which both had, in some way, indicated their assent.

The oral testimony delivered by each party was in support of the averments in the statement and affidavit respectively. The plaintiff in his contention was corroborated by the facts, among others, that he had not signed the paper, that it had not been delivered to him, that it did not exhibit the customary

receipt declaring the money to have been paid on account of the alleged contract expressed in it, and that the terms therein set forth differed from those contained in a letter from defendant read in evidence. The defendant's theory was in turn supported by the testimony of those who declared the paper was written by the direction and at the dictation of the plaintiff, that he fully assented to it, that it was left in the possession of one Russell at their joint request and for their joint benefit, etc.

Thus when the testimony closed each party was found maintaining, to the extent of his ability, the same issue of fact he had tendered to his adversary in the pleadings. That such an issue of fact could be properly disposed of only by the jury seems to us to be a conclusion needing no argument to support it.

Even if, arguendo merely, we concede the correctness of the statement contained in the opening of the brief of the learned counsel for appellee, that "the evidence is overwhelming that the memorandum of October 15th was dictated by the vendee, and the various terms thereof suggested by himself," etc., this would not shift the function of determining a disputed fact from the jury to the presiding judge. And it is beside the mark to argue and cite cases to prove that if such a memorandum were to be made the foundation of a bill for specific performance, the statute of frauds and perjuries would not operate to prevent a decree. Our statute does not declare an agreement for the sale of land void "if not reduced to writing and signed by the parties." It only enacts that "all leases, etc., made or created by livery and seisin only, or by parol, and not put in writing and signed by the parties so making and creating the same, shall have the force and effect," etc. It does not follow, therefore, that because, in a proceeding for specific performance, the production of a memorandum in writing, signed by the vendor alone, meets the requirements of that statute, the mouth of the vendee is closed from asserting that the contract evidenced by the writing is not his contract, that he never assented to it or adopted it and that it was nothing but the self-serving declaration of the party whose act alone it, on its face, purported to be.

The error into which the learned judge fell, in this respect, manifests itself not only in the answers to the points presented

on either side, but in the general charge as well, as the following excerpt from it shows: "We are satisfied that as no fraud, accident or mistake was alleged or shown in the making of the written contract, that it is incompetent, under the law, for the plaintiff, Joseph Clever, to contradict its terms, or to materially modify the contract by fixing the surrender of the lease of the peach orchard at a particular date, and making that of the essence of the contract." The first, tenth, eleventh, twelfth and nineteenth assignments are sustained.

After the jury shall have determined what the contract really was they must next determine, under the evidence, whether or not, the defendant, before the rescission by the plaintiff, had failed to perform, in any material particular, the obligations imposed on him by the contract as found. If so, then rescission was the plaintiff's right and he ought to recover his money. If on this fact the finding be adverse to the plaintiff the defendant may have a verdict for any damages he suffered beyond the purchase money he received. The general rule is "that the measure of damages, where there has been a resale, is the difference between the price agreed to be paid by the vendee and that obtained on a resale. It is predicated of course of the undisputed facts in the case that the resale was a public one, fairly conducted, after full notice to the public and the vendee, upon the same or as advantageous terms as the first:" Bowser v. Cessna, 62 Pa. 148; Pepper v. Deakyne, 212 Pa. 181. It was said, however, in Freeman v. Husband, 77 Pa. 389: "If the terms were materially altered upon the resale, he (the purchaser) was thereby released, for he cannot be held to conditions that did not form part of his contract." Hare v. Bedell, 98 Pa. 485; Weast v. Derrick, 100 Pa. 509.

As the amount claimed by either party is small, the facts, although supported by contradictory evidence, within a narrow compass, and the principles of law applicable but few, a retrial, along the lines herein indicated, ought to result in a just and final disposition of the cause.

Judgment reversed, and a venire facias de novo awarded.