## Wolfson et ux. v. Gicas

*James P. Bohorad* and *Howard G. Stutzman*, for plaintiffs.

*B. V. O'Hare*, for defendant.

DALTON, J., March 23, 1953. — Plaintiffs, vendors under an agreement for the sale of real estate, are here seeking to recover from their vendee the difference between the contract price and the sum obtained on a subsequent resale to a third party after the vendee had allegedly refused to take title.

By the agreement of sale, dated September 18, 1951, plantiffs agreed to convey to defendant, on or before October 18, 1951, certain premises located at 125

North Main Street, Shenandoah, for the sum of $17,500. The agreement contained the following further provision:

"It is further agreed that the party of the second part shall, to such person or persons as the parties of the first part shall direct, execute: (1) A mortgage in the sum of $17,500 covering the premises to be conveyed and (2) a chattel mortgage covering the various restaurant equipment now owned by said second party and to be used by him on the premises to be conveyed.

In the copy attached to the complaint, the above provisions are followed immediately by the usual testimonial clause and the signatures of the parties together with the signature of an attesting witness. However, on the reverse side of the sheet appears the following additional matter:

"The mortgage on the premises herein referred to shall be payable in monthly installments of $194.30 for a period of ten years. The monthly payments include interest at the rate of six per cent per annum."

Oddly enough, this additional matter has not been reproduced in the paper books of the parties, nor have they made any reference to it in their respective arguments. We are therefore not informed as to whether they consider this additional matter to be part of the agreement.

The allegations of the complaint are to the following effect. Shortly before October 18, 1951, which was the date fixed for settlement, defendant orally informed plaintiffs' counsel that he was no longer interested in the purchase and would not complete the transaction. On October 19, 1951, plaintiffs' counsel wrote defendant a letter stating that plaintiffs were willing and ready to go through with the agreement and insisted upon defendant's compliance therewith. In this letter, defendant was also informed that if he refused to do so an action for damages would be instituted against him.

Pursuant to this letter, defendant appeared at the office of plaintiffs' attorney, who tendered him a deed for the premises and demanded execution by him of the mortgages provided for in the sales agreement, whereupon defendant stated that he refused to go through with the transaction. Again, on November 14, 1951, plaintiffs' attorney wrote another letter to defendant, wherein defendant was informed that plaintiffs insisted upon completing the transaction and defendant was requested to fix a time and place for settlement. Defendant was further informed by this letter that if plaintiffs did not hear from him within five days they would assume that defendant did not intend to go through with the deal, and that in that event plaintiffs would file suit for the full purchase price. Defendant ignored the letter. Thereafter, in February 1952, plaintiffs conveyed the premises to one Charles J. Czulada for the sum of $15,000, which they allege was the highest and best offer obtainable. They demand judgment for the sum of $2,500, the loss incurred on the resale.

Defendant has filed preliminary objections, consisting of a "Petition Raising Question of Nonjoinder of a Necessary Party Plaintiff" and a demurrer.

The petition raising the question of nonjoinder alleges that the Philadelphia and Reading Coal and Iron Company, a predecessor in title to the land, by deed dated October 15, 1873, retained possession and title to the subsurface and severed the title of the surface from that of the underlying minerals. Defendant contends that by virtue of this reservation the Philadelphia and Reading Coal and Iron Company is a tenant in common with plaintiffs and should be joined as a party plaintiff in this action to recover damages. The contention cannot be sustained. The Philadelphia and Reading Coal and Iron Company is a stranger to this contract, and moreover, as was clearly held in Powell et

al. v. Lantzy et al., 173 Pa. 543, 549, "the owner of mineral rights holding by virtue of a reservation in a deed is neither a tenant in common nor a joint tenant with the owner of the surface. Each has a separate estate." The petition is dismissed.

In support of the demurrer, defendant raises nine objections. The first objection is that: "The facts alleged in the complaint do not set forth a cause of action entitling the plaintiff to recover from the defendant." A general objection of this nature is insufficient (Dillon v. Evans, 69 D. & C. 430; Faust v. Kunselman, 30 Wash. 106), since it violates Pa. R. C. P. 1028($a$), which requires preliminary objections to state *specifically* the grounds relied upon. The objection is dismissed.

In his brief of argument, defendant uses the foregoing general objection as a basis for arguing two questions which were not specifically raised by the preliminary objections filed of record. This may not be done.

"Matters not raised in the objection and not disclosed before the argument, cannot be argued and will not be considered by the court": Goodrich-Amram, sec. 1028($a$)-1; Melnick v. City of Pottsville, 43 Schuyl. 121; Hoppes v. Dreher, 45 Schuyl. 14.

Although the contentions thus advanced are not properly before us, both sides have argued them upon the merits. In such circumstances, we feel at liberty to add that we have not been convinced of the validity of either contention.

Defendant argues that the complaint fails to allege that plaintiffs' attorney was authorized to demand performance of defendant or tender a deed to him. It is a familiar principle that one who seeks to impose liability upon another for the acts of the *latter's* alleged agent must plead and prove the agent's authority. That principle, however, has no application here. In the

case at bar, plaintiffs are standing upon the acts of their *own* agent, and by the mere act of bringing suit based partially on such acts they ipso facto affirm their agent's authority to perform them: Cake Appeal, 110 Pa. 65, 68; Hasinger et al. v. New York Central Mutual Fire Insurance Company, 117 Pa. Superior Ct. 475, 478; Redington Hotel v. Guffey, 148 Pa. Superior Ct. 502, 505.

Defendant argues further that plaintiffs' statement of intention, in the letter of November 14, 1951, to file suit for the full consideration price, was an election on their part to keep the contract alive and constituted a waiver of the alleged breach. That identical argument was raised and overruled in Wasserman v. Steinman et ux., 304 Pa. 150, where it was said (p. 155):

"The threat of the defendants to bring suit for the enforcement of the agreement, made one week after the time for settlement had expired, did not change the legal rights of the parties. . . . Even had defendants brought suit as threatened they could have discontinued it and sought another remedy."

See also, on the general subject of election of remedies, Pennsylvania Company for Insurance on Lives and Granting Annuities, etc., v. Harr, 320 Pa. 523, 528-29; Dunhour v. Factor, 76 D. & C. 282.

The second objection assigned is that the complaint fails to allege a tender of the deed. This objection is fully answered by the averments of paragraph 8 of the complaint, wherein it is alleged that plaintiffs' attorney tendered to defendant "a good and lawful deed, duly signed, executed and acknowledged by the plaintiffs, conveying to the defendant in fee simple, clear of all liens and encumbrances, the premises described in said argeement."

Furthermore, if it be true, as alleged in the complaint, that defendant repudiated the agreement before the date fixed for settlement and persisted in that

repudiation, tender of a deed was unnecessary. In this connection, it was said in Boyd v. Hoffman, 241 Pa. 421, 423-24:

"She had, however, given notice that she would not carry out the contract, and a tender of a deed therefore was unnecessary. It would have been a useless thing for the plaintiff to tender a deed which the defendant had beforehand told him she would not accept. Whether or not it was actually tendered, was immaterial." See also, Messinger v. Lee, 163 Pa. Superior Ct. 297.

The third objection in support of the demurrer has not been referred to on the argument and is deemed abandoned.

The fourth objection raised is that there is no allegation that plaintiff ever designated the name of the person or persons to whom the mortgages were to be executed. But if defendant repudiated the contract before the date fixed for settlement and persisted in that repudiation thereafter, as the complaint alleges, designation of the mortgagees would have been a vain and useless act which the law does not require. Cf. Tudesco et ux. v. Wilson, 163 Pa. Superior Ct. 352, 358.

The fifth objection is that plaintiffs have demanded of defendant the sum of $17,500 in cash, whereas his only obligation under the agreement was to execute mortgages for that amount. The complaint does not support that objection. It clearly appears from paragraphs 8 and 9 and the exhibit attached to the latter paragraph that plaintiffs at all times insisted only upon defendant's execution of the mortgages as provided for in the agreement. The only reference to a possible payment of $17,500 in cash was a threat to institute suit for that sum if defendant failed to comply with his agreement to accept a deed and execute the mortgages.

The sixth objection is that the Philadelphia and Reading Coal and Iron Company has an outstanding

title to the coal and mineral rights in the land. That fact, if it be such, does not appear on the face of the complaint. Consequently, the objection is a speaking demurrer, which has always been held to be bad: Steel v. Levy, 282 Pa. 338, 341; Goodrich-Amram, sec. 1017(*b*)-11.

The seventh objection has not been pressed on the argument and is deemed abandoned.

The eighth objection in support of the demurrer is directed to plaintiffs' right to recover the loss incurred upon the resale, which, so far as appears from the complaint, was privately negotiated. The objection does not question the propriety of such measure of damages, but asserts that notice to the vendee of the proposed resale is a condition precedent to such right of recovery. Plaintiffs do not allege that such notice was given. Viewing the objections in the light of all the averments of the complaint, which for present purposes must be assumed to be true, the narrow question for decision is this: If a vendor may recover from a defaulting vendee, who has expressly renounced the contract, the loss incurred upon a *private* resale, is prior notice to defaulting vendee of such proposed resale, a condition precedent to the right of recovery? We have found no authority which has squarely passed upon that question.

It has long been held that a vendor may recover the loss incurred upon a *public* resale, provided the resale is diligently held and fairly conducted upon terms not less advantageous to the purchaser than those of the first sale and passes a title equally as valuable. This measure of damages has been applied or recognized in sheriff's sales (see inter alia, Forster et al. v. Hayman, 26 Pa. 266; Hughes v. Miller, 186 Pa. 375; Pepper v. Deakyne (No. 1), 212 Pa. 181); orphans' court sales (Banes et al. v. Gordon, 9 Pa. 426; Singley v. Swain's Admrs., 33 Pa. 102); public sales by assignees or receivers of insolvents' estates (Weast v. Derrick, 100

Pa. 509; Ramsay v. Hersker, 153 Pa. 480; Helfrick v. Freck, 3 Sadler 352) ; nonjudicial public auction sales (Ashcom v. Smith, 2 P & W. 211; Bowser v. Cessna, 62 Pa. 148; Fifth Bleuscher Building Assn. v. Sylvester, 35 Pa. Superior Ct. 62) ; and private sales followed by public resales (Clever v. Clever, 38 Pa. Superior Ct. 66; McClurg v. Futer, 52 Pa. Superior Ct. 485). In cases falling within the two categories last mentioned, the rule of damages appears to be based upon the thought that the price realized upon a public resale is an accurate reflection of market value. Thus, in Bowser v. Cessna, 62 Pa. 148, 150, after stating that "the damages to be recovered is the difference between the value of the property at the time of the breach and the sum agreed on as the price", Mr. Justice Sharswood went on to say that the rule permitting recovery of the loss incurred on a resale was "predicated of course on the undisputed facts in the case that the resale was a public one, fairly conducted, after full notice to the public and the vendee, upon the same or as advantageous terms as the first, in short, that it was bona fide. Why should not the difference of price be adopted as the true test of the difference of value? When we speak of value we mean market value." The same reasoning was adopted in Clever v. Clever, 38 Pa. Superior Ct. 66, 75.

Apparently the only case which has ever come before our appellate courts where the vendor attempted to recover a loss incurred on a *private* resale is that of Goodritz v. McMahon, 64 Pa. Superior Ct. 479. An examination of the paper books filed on the appeal in that case discloses that it was tried in the court below, without objection by the vendee, on the theory that the loss suffered on the private resale was the proper measure of damages, provided the other conditions requisite for such recovery were present. There was some scant tes-

timony that the vendee had not been notified of the proposed resale, but that point was not a factor in the ultimate decision of the case. The vendor obtained a verdict, but the trial court entered judgment n. o. v. for the vendee, on the ground that the terms of the resale were different from and less advantageous to the purchaser than those of the first sale. The Superior Court affirmed the judgment for the same reason. In the course of its opinion, the appellate court said that "the vendor may subsequently sell the property, after notice," but that statement respecting the necessity of notice would appear to be dictum since it formed no part of the actual ground of decision.

So far as our research discloses, there have been only three cases in which our appellate courts have expressly passed upon the requirement of notice to the vendee of a proposed resale. They all involved public sales.

In Gaskell v. Morris, 7 W. & S., 32, 38, it was said:

"The fourth error is, that the defendant below received no notice that a second sale of the property was to take place, nor of the time and place thereof. But the record shows that evidence was given to the court and jury, showing that he was required and notified by the sheriff, the plaintiff below, to pay the purchase money according to the terms of the sale, or otherwise the property would be resold at his risk. This notice, *if any of the sort was requisite*, was sufficient to put him on the look-out, so as to guard against the consequences of a resale, which could only be done by his paying the purchase money without delay. It was certainly not the duty of the sheriff to notify the defendant below of the time and place at which the resale would be made; it was sufficient, *if not more than he was bound to do*, to let the defendant know that unless he paid the purchase money after it had become payable according to his undertaking, a resale would be made

at his risk; and this, as appears by the evidence, was done." (Italics supplied.)

Herman v. City of Allegheny, 29 Pitts. L. J. 347, involved a public sale of land by the city. The vendee asked the court to charge, inter alia:

"That to entitle the plaintiff to recover it must show that a notice was given to defendant of the time and place of resale of the said lots."

The trial judge declined to charge as requested, and said:

"It is not necessary that a notice should be given to the defendant of the exact time and place of resale; but it is necessary that notice should be given to the defendant that the lots would be resold and that advertisement should be made thereof, and the sale should be made upon the same general terms as the first sale."

The vendor recovered a judgment which was affirmed by the Supreme Court. The appellate court said:

"It did not appear what were the conditions of the sale, or that it was expressly stipulated that upon noncompliance the property was to be resold at the risk of the purchaser. In such a case, where he is absolutely bound for the difference, there would be reason to hold that he must have notice of the exact time and place of the resale. But in the case before us the charge of the court went as far as the defendant below had any right to ask."

Obviously, all that was decided there was that the charge of the trial court contained no error prejudicial to the vendee.

In Hartman v. Pemberton, 24 Pa. Superior Ct. 222, the sheriff notified a defaulting bidder that the property would be resold four days later and that he would be held responsible for any deficiency incurred upon the resale. In sustaining the sufficiency of this notice, the Superior Court said (p. 228):

"If any other notice were required than that contained in the conditions of the sale, this was sufficient to inform the defendant, and to *give him an opportunity to protect himself at the second sale.* . . the relations of the parties were clearly maintained by the notice referred to, *if indeed that were necessary.*" (Italics supplied.)

It would appear from the foregoing cases that the only purpose to be served by notice to the vendee of a proposed *public* resale is to give the defaulting bidder an opportunity to protect himself against the consequences of a resale, either by complying with his contract without further delay or by coming in and bidding at the resale in an amount not less than his original bid. There may be reasonable grounds for requiring such notice where both sales are public. We are, however, unable to perceive any rational basis for requiring similar notice where both sales are *private*, at least where, as is here alleged, the vendee has expressly refused to abide by his agreement. The vendee could not protect himself against the consequences of a private resale by submitting a competitive bid. By its very nature, a privately negotiated sale to a third party excludes any notion of public competitive bidding. And of course, the defaulting vendee has no right to require private renegotiation of his own contract. The only purpose which could possibly be served by notifying him of the proposed private resale would be to give him one more opportunity to comply with the terms of his contract. But, if he has already expressly declined to abide by his agreement, he is not entitled to any further demand or notice to comply.

"Under such circumstances, the vendor has the right to accept as final the positive refusal of the purchaser to complete the sale and take the property": Sanders v. Brock, 230 Pa. 609, 616. The objection is dismissed.

The ninth objection in support of the demurrer is a repetition of the fourth and fifth, and is dismissed for the reasons stated in connection therewith.

And now, March 23, 1953, the preliminary objections to the complaint are dismissed and defendant is allowed 20 days from this date to file an answer.